# RICE *v.* SIOUX CITY & ST. PAUL RAILROAD COMPANY.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

Submitted January 14th, 1884.—Decided March 3d, 1884.

*Public Lands—Statutes.*

Claimants against the government under legislative grants of public land must show a clear title, as gifts of public domain are never to be presumed.

The grant of swamp lands to each of the States of the Union by the act of September 28th, 1850, 9 Stat. 519, did not confer a similar grant upon the Territories; and the subsequent admission of a Territory as a State under an act which provided that all laws of the United States not locally inapplicable should have the same force and effect within that State as in other States of the Union did not work a grant of swamp lands under the act of 1850.

*Mr. John B. Sanborn* for appellant.

*Mr. E. C. Palmer* for appellee.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court. This case briefly stated is as follows:

On the 28th of September, 1850, what is now known as the swamp-land act, c. 8, 9 Stat. 519, was passed by Congress. By sections 1, 2, and 3 swamp lands were defined and a special

grant made to the State of Arkansas.   Section 4 is in these words :

"That the provisions of this act be extended to, and their benefits conferred upon, each of the other States of the Union, in which such swamp and overflowed lands, known or designated as aforesaid, may be situated."

Minnesota was then a Territory, and on the 3d of March, 1857, an act of Congress, c. 99, 11 Stat. 195, was passed, granting to that Territory, for the purpose of aiding in the construction of certain railroads, " every alternate section of land, designated by odd numbers, for six sections in width on each side of each of said roads."   If when the lines of a road were definitely fixed it should appear that any of the sections included in the terms of the grant had been sold or otherwise appropriated by the United States, authority was given for the selection of others in lieu within fifteen miles of the line.   All lands before reserved to the United States for the purpose of aiding in any object of internal improvement or for any other purpose whatever were excluded from the operation of the act, except for the right of way.

On the 11th of May, 1858, Minnesota was admitted into the Union as a State.   11 Stat. 285, c. 31.   By the act of admission (sec. 3) "all the laws of the United States," "not locally inapplicable," were "to have the same force and effect within that State as in other States of the Union."

The line of what is now the Sioux City & St. Paul Railroad, built by a company entitled to the privileges of the act of March 3d, 1857, c. 99, was located in April, 1859, and the lands involved in this suit are odd numbered sections within the six mile limits according to that line.

On the 12th of March, 1860, Congress passed an act, c. 5, 12 Stat. 3, extending the provisions of the act of September 28th, 1850, c. 84, to the States of Minnesota and Oregon, subject to a proviso, as follows :

"That the grant hereby made shall not include any lands which

the government of the United States may have reserved, sold, or disposed of (in pursuance of any law heretofore enacted) prior to the confirmation of title to be made under the authority of the said act."

The lands now in dispute were certified to the State under this act, and conveyed by the governor to Rice, the appellant. This suit was brought by the railroad company to establish its title under the railroad grant by the act of March 3d, 1857, c. 99, as against the swamp-land certificate. The Circuit Court sustained the claim of the railroad company and decreed accordingly. To reverse that decree Rice took this appeal. The single question presented is, whether the lands passed under the railroad or the swamp-land grant.

That the swamp-land act of 1850 operated as a grant *in præsenti* to the States then in existence of all the swamp lands in their respective jurisdictions is well settled. *Railroad Company* v. *Smith*, 9 Wall. 95; *French* v. *Fyan*, 93 U. S. 169; *Martin* v. *Marks*, 97 U. S. 345. As Minnesota was a Territory in 1850, it is conceded that the title to the swamp lands within its territorial limits did not pass out of the United States at that time, because there was then no grantee in existence. It is contended, however, that on the admission of the State into the Union in 1858, the grant, which had before rested in compact only, became absolute, and carried the title to the State, as against the United States and subsequent grantees, from the date of the original act, September 28th, 1850, or at least from the date of the admission of the State.

In *French* v. *Fyan, supra*, it was said in the opinion, at one place, "that this court has decided more than once that the swamp-land act was a grant *in præsenti* by which the title to those lands passed at once to the State in which they lay, except to States admitted to the Union after its passage;" and at another, "for while the title under the swamp-land act, being a present grant, takes effect as of the date of that act, or of the admission of the State into the Union, when this occurred afterwards." From these expressions it is argued that the question of the right of new States to claim the benefits conferred by

the provisions of the act has been settled. The case which was then before the court related only to the operation of the act in a State which was in existence at the time of its passage, and called for no consideration of its effect on new States. All that was said as to new States was merely incidental to the main question, and by no means intended as an authoritative declaration of the law applicable to that class of cases. We feel quite at liberty, therefore, to consider that question an open one and to treat it accordingly.

Donations of the public domain for any purpose are never to be presumed. Those who claim against the government under legislative grants must show a clear title. The grant under the act of 1850 was to Arkansas and "the other States of the Union." Arkansas was an existing State, and the grant was to all the States *in præsénti*. It was to operate upon existing things, and with reference to an existing state of facts. It granted "the whole of those swamp and overflowed lands made unfit thereby for cultivation, which shall remain unsold at the passage of this act." The Secretary of the Interior was required to make out, "as soon as practicable," lists and plats of lands, the greater part of which were "wet and unfit for cultivation," and to transmit the lists, &c., to the governor of the proper State. There is not a word in the act to show that the grant was to be a continuing one. It was to take effect at once, between an existing grantor and several separate existing grantees. There were undoubtedly at that time lands "wet and unfit for cultivation" in the Territories as well as in the States. Confessedly no grant was made to the Territories or any of them. This shows clearly the intention of Congress not to dispose of any more swamp lands, at that time and in that way, than those in the States. It was clearly within the power of Congress to make the same grants to Territories if it had been considered desirable. Cases are numerous in which grants were made to Territories to aid in building railroads. The act of March 3d, 1857, making the grant to the Territory of Minnesota is one instance of that kind. The swamp-land grants were made to enable the States to construct the necessary levees and drains for the reclamation of the lands. They were, therefore,

in aid of public improvements, and could as well be made to the Territories as to the States.

At the time of the original grant it was not known when another State would be admitted into the Union, nor what would then be the wants of the United States or the condition of the swamp lands. Events might happen that would render such a grant at that time entirely inappropriate. Seven States have been admitted since, three before the late civil war began and four afterwards, and in six of them there must have been public lands which were in part wet and unfit for cultivation, Minnesota was the first and Oregon the second State admitted. None were admitted until nearly eight years after the act was passed, and the last did not come in until nearly twenty-five years had elapsed. If the interpretation which has been put on the act by the appellant is the true one, every parcel of public land in the Territories, as subdivided under the law for sale, the greater part of which was " wet and unfit for cultivation " on the 28th of September, 1850, was from that date reserved to and set apart by the United States for donation to any new State that might thereafter be admitted to the Union, within whose boundaries it should fall. Nothing was reserved from the railroad grant to the Territory of Minnesota on the 3d of March, 1857, except lands theretofore reserved by the United States for some purpose; and if these lands were reserved at all, they were for the purposes of this donation. If reserved, they could neither be sold to purchasers nor settled upon for pre-emption, for the reservation is of lands unsold at the date of the passage of the act.

Such a reservation was clearly not in the mind of Congress, and the subsequent legislation as well as the language of the act shows it. Of the language of the act enough has already been said. We, therefore, turn to the subsequent legislation. As has been seen, Minnesota was admitted into the Union as a State on the 11th of May, 1858. Oregon was admitted on the 14th of February, 1859. 11 Stat. 383, c. 33. In the acts of admission there were specific grants of land to each State for certain purposes, but no reference was made directly or indirectly to the swamp lands. All the grants made were in

consideration, among other things, of an undertaking on the part of the State, irrevocable without the consent of the United States, that the State should never interfere with the primary disposal of the soil within the same by the United States, or with any regulations Congress might find necessary for securing the title in the soil to *bona fide* purchasers. It is of some significance also that the act of Congress authorizing the people of the Territory of Minnesota to form a State government preparatory to their admission into the Union, c. 6, 11 Stat. 166, in which the propositions for grants of lands were contained, was passed on the same day with the act making the railroad grant under which the appellee now claims. Following this, on the 12th of March, 1860, nearly two years after Minnesota was admitted, and one year after the admission of Oregon, the act extending in express terms the provisions of the swamp-land act to these States was passed. In this way, as we think, for the first time the swamp lands falling within the description of the act of 1850, and then unsold or otherwise disposed of, were granted. No similar laws have been passed in favor of States which have since been admitted into the Union. In 1873, when the statutes of the United States were revised, the swamp-land acts were re-enacted in sections 2479 and some others which followed. § 2479 is as follows:

"To enable the several States (but not including the States of Kansas, Nebraska and Nevada) to construct the necessary levees and drains to redeem the swamp and overflowed lands therein, the whole of the swamp and overflowed lands made unfit thereby for cultivation and remaining unsold on or after the 28th day of September, A. D. 1850, are granted and belong to the several States respectively in which such lands are situated : *Provided, however*, That said grant of swamp and overflowed lands, as to the States of California, Minnesota and Oregon, is subject to the limitations, restrictions and conditions hereinafter named and specified as applicable to said three last States respectively."

Then follows, § 2490, continuing in force the specific provisions in the act of March 12th, 1860, extending the benefits of the act to Minnesota and Oregon.

Much stress was laid in the argument on the provision in the act admitting Minnesota into the Union, to the effect that "all the laws of the United States which are not locally inapplicable shall have the same force and effect within that State as in the other States of the Union." This is disposed of by what has already been said. As the act of 1850 related only to States in existence when it was passed, it was locally inapplicable to Minnesota until its provisions were actually extended to that State by the act of March 12th, 1860. It follows that the title of the railroad company under the act of 1857 is superior to that of the appellant. The lands were not at the time of the passage of that act reserved to the United States for any purpose, and they were not, therefore, excepted from its operation.

*The decree of the Circuit Court is affirmed.*