Matthews *v.* Goodrich *et al.*

---

No. 10,530.

## Matthews *v.* Goodrich et al.

PRACTICE.—*Special Finding.*—*Record.*—A special finding of facts, with conclusions of law, made at the request of a party and signed by the judge, is a part of the record without an order of court.

SWAMP LANDS.—*Treasurer's Certificate Evidence of Legal Title.*—Under section 11 of the act of the State Legislature to regulate the sale of swamp lands, etc., approved May 29th, 1852, 1 G. & H. 599, the county treasurer's certificate of entry is evidence of legal title to the land mentioned therein in the person in whose name it is issued.

SAME.—*Act of Sept. 28th, 1850, is Grant In Præsenti.*—By the act of Congress of Sept. 28th, 1850, R. S. of U. S., section 2479 (see 1 G. & H., p. 737), the whole of the swamp and overflowed lands within this State, made unfit thereby for cultivation, which remained unsold at the passage of that act, were granted to this State, and such act was a grant *in præsenti.*

SAME.—*Patent.*—*Selection of Lands.*—*Evidence.*—The fact that a patent was subsequently issued to this State by the United States is conclusive evidence that the lands embraced therein were selected for the State, as swamp lands, and that the selection was approved by the proper authority, and establishes title to such lands in this State, commencing on Sept. 28th, 1850.

SAME.—*Relinquishment by State.*— *Title of State's Grantee.*—The State has

Matthews *v.* Goodrich *et al.*

never relinquished to the United States its title to the lands so patented, and evidence of a title, to any of such lands, derived from the United States, subsequent to Sept. 28th, 1850, is of no avail against a title acquired from the State under the swamp land act.

SAME. — *Invalid Release by Governor,* — The attempted release or conveyance, by the Governor of this State, to the United States, in 1859, of certain of such lands, was without authority and invalid.

SAME. — *When State's Grantee May not Question Title from United States.* — The State's grantee is only estopped from questioning a title derived from the United States to particular lands of those granted by the swamp land act of 1850 for which the State received compensation instead of the lands.

From the Benton Circuit Court.

*D. E. Straight, U. Z. Wiley* and *S. F. Carter,* for appellant.

*H. W. Chase, F. S. Chase* and *F. W. Chase,* for appellees.

PER CURIAM.—While a member of the Supreme Court Commission, Judge BLACK wrote an opinion which was taken and has been held under advisement by the court. That opinion is now adopted as the opinion of the court, and upon the reasoning therein the judgment is reversed, at the cost of appellees, and the cause remanded, with instructions to the court below to state conclusions of law in accord with the opinion, and render judgment accordingly. The following is the opinion, viz. :

BLACK, C.—The appellant sued the appellees, the complaint being in two paragraphs, the first for the recovery of the possession of certain land, eighty acres, in Benton county, and damages for its detention; the second for the quieting of the title of the plaintiff to the same land against adverse claim of the defendants.

The defendants answered jointly by general denial. The defendants Mary P. Goodrich, Elizabeth E. Goodrich and Edward E. Goodrich filed a cross complaint seeking the quieting of their title to forty acres of said land, and the defendant Melville C. Smith filed a cross complaint for like relief as to the remaining forty acres of the land described in the

complaint. The plaintiff filed denials. The cause was tried by the court, and a special finding was rendered.

The question whether the court erred in its conclusions of law is the only one before us.

The court stated the facts, in effect, as follows:

January 22d, 1858, the United States conveyed by patent to the State of Indiana the real estate described in the complaint, with certain other real estate, as swamp and overflowed lands, under the act of Congress of the United States of September 28th, 1850.

July 1st, 1879, in consideration of one hundred dollars then paid by the plaintiff to the treasurer of said county, he executed to the plaintiff a certificate showing the receipt by said treasurer from the plaintiff of said sum as the purchase-money for the land described in the complaint, and stating that the receipt of said purchase-money entitled the plaintiff to a deed from the State of Indiana for said land on presentation of this certificate to the treasurer of said State. Said certificate, set out in the finding, was in the form prescribed by section 9, 1 G. & H. 598.

No patent or deed had been issued by this State to the plaintiff for said land, and the plaintiff had no title to said land except such as she may have derived by virtue of said certificate.

The United States, through the Department of the Interior, under an act of Congress, of September 28th, 1850, entitled "An act granting bounty land to certain officers and soldiers who have been engaged in the military service of the United States," issued, on the 26th of May, 1851, to Henry Day, who had been a soldier in the Florida war, a military warrant, numbered 4264, which entitled him "to locate one hundred and sixty acres, at any land-office of the United States, in one body and in conformity to the legal subdivisions of the public lands, upon any of the public lands subject to entry at private sale." This land warrant was assigned by said Day to Henry L. Ellsworth, on the 14th of

April, 1852; and said Ellsworth, on the 19th of June, 1852, located said land warrant, at the land office at Crawfordsville, Indiana, on two adjoining half-quarter sections, one of them being the land described in the complaint. Said Day filed a *caveat*, alleging that the assignment of said warrant to Ellsworth had been procured by fraud, but withdrew the same, and, on the 3d day of May, 1853, again assigned the warrant to Ellsworth. On the 9th of May, 1853, the commissioner of the general land-office, on account of said *caveat*, its withdrawal and said reassignment of said warrant, directed the register and receiver of the land-office at Crawfordsville, Indiana, to cancel said location of said warrant, and to relocate the same upon the same lands in the name of said Ellsworth, the assignment of said warrant by said Day on the 3d of May, 1853, being recognized as a valid one. On the 17th of May, 1853, said Ellsworth, at said land-office at Crawfordsville, again located said warrant upon the same lands, and a proper certificate of such location was duly issued to him.

The Governor of the State of Indiana executed to the United States a certain release or conveyance, which was mailed at Indianapolis on the 17th of January, 1860, and received at the general land-office of the United States on the 20th of January, 1860, which reads as follows:

" To all to whom these presents shall come, greeting: Know ye that whereas, under the provisions of the act of Congress, approved September 28th, 1850, entitled, 'An act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits,' the register and receiver of the United States land-office at Crawfordsville, Indiana, upon evidence presented to them by the authorized agent of said State, reported to the commissioner of the general land-office the following described tract, piece or parcel of land: " (describing the land mentioned in the complaint herein) " as enuring to said State under the law aforesaid; and whereas the said tract, piece or parcel of land hereinbefore described, was located by H. L. Ellsworth, on the 17th of May, 1853, with

warrant 4264, act of 1850; and whereas, on the 24th of August, 1857, the said tract of land was approved to the said State of Indiana by the secretary of the interior in a list, No. 3, for the Indianapolis district; and whereas, on the 22d of January, 1858, the said tract of land was patented to the said State in patent No. 3, for said Indianapolis district, as coming to her under the said act of 1850; and whereas, by an act of Congress, approved March 2d, 1855, entitled, 'An act for relief of purchasers and locaters of swamp and overflowed land,' it is directed ' that the President of the United States cause patents to be issued as soon as practicable to the purchaser or purchasers, locater or locaters, who have entries of the public lands claimed as swamp lands, either with cash or with land warrants or the script, prior to the issue of patents to the State or States, as provided for by the second section of the act, approved September 28th, 1850, entitled, "An act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits," any decision of the secretary of the interior or other officer of the government of the United States to the contrary notwithstanding:' Now, therefore, be it known that I, A. P. Willard, Governor of the State of Indiana, by virtue of the authority in me vested, in consideration of the premises, and in order to enable the United States, in compliance with the foregoing recited provisions of the said act of Congress, approved March 2d, 1855, to issue a patent to the party who made the aforementioned entry, do hereby release and forever relinquish unto the United States of America all right, title, claim or interest of any kind whatsoever of the said State of Indiana, in and to the land hereinbefore described, and every part and portion thereof acquired under or by virtue, either of the aforesaid selection and approval or the patent heretofore issued to the said State, intending hereby to restore this land back to the control of the United States as fully as if said approval had never been made or said patent issued.

"In testimony whereof, I have hereunto subscribed my name and caused to be affixed the seal of the State of Indiana, at Indianapolis, this ,— day of ———, 1859.

"By the Governor.    ASHBEL P. WILLARD, Governor.

"Attest: C. L. DUNHAM, Secretary of State."

On the 1st of February, 1860, the United States issued a patent to Henry L. Ellsworth for the land described in the complaint, pursuant to the relocation of said land warrant on the 17th of May, 1853, and said patent was not put on record in the recorder's office in Benton county.

On the 4th of October, 1852, said Ellsworth conveyed by warranty deed the land described in the complaint, with other lands, to Chauncy A. Goodrich, for the expressed consideration of one dollar, which deed was duly recorded in the proper deed record. Said Ellsworth died in December, 1858, intestate as to his lands in Indiana. Said Chauncy A. Goodrich died in 1860, and whatever title he had in said land vested in his two sons, Chauncy and William H. Goodrich. Said son Chauncy Goodrich died in 1862, and whatever title he had in said land vested in his widow, Elizabeth E., and his son, Edward E. Goodrich, two of the defendants. On the 10th of May, 1863, said William H. Goodrich and wife and said Elizabeth E. and Edward E. Goodrich by deed conveyed whatever title they had in the east one-half of the land described in the complaint to Erastus N. Smith, and this deed was duly recorded. Said Erastus N. Smith and wife, on the 9th of September, 1870, by deed conveyed whatever title he had in said land to the defendant Melville C. Smith. This deed was properly recorded. In August, 1874, William H. Goodrich died, and his interest in the west half of the lands described in the complaint vested in his widow, the defendant Mary P. Goodrich.

At the commencement of this action, and for five years prior thereto, said defendant Melville C. Smith was and had been in possession of said east half of the lands described in the complaint, making some improvements thereon, and said.

defendants Mary P., Elizabeth E. and Edward E. Goodrich, at the commencement of this action, were, and for five years previously had been, in possession of the west half of said lands described in the complaint, making some improvements thereon. None of the parties to this action have any right, title or interest in or to the real estate in controversy, except such as they may have from the facts above stated.

As conclusions of law from these facts the court stated:

"1. That the plaintiff Sallie A. Matthews has no title whatever to said real estate.

"2. That the defendant Melville C. Smith is the owner in fee simple of said" east half of the land mentioned in the complaint, describing it.

"3. That said defendants Mary P. Goodrich, Elizabeth E. Goodrich and Edward E. Goodrich are the owners in fee simple as tenants in common, in the proportion of one-half in said Mary P. and one-fourth each in said Elizabeth E. and Edward E., of said " west half of the lands described in the complaint, describing the same.

"4. That the plaintiff's claim of title, on account of her said purchase of said land as swamp and overflowed land from the treasurer of said county, is a cloud upon the said titles of said defendants. · Wherefore the court finds for the defendants upon the plaintiff's complaint. The court further finds for the defendant Melville C. Smith on his cross complaint, that his title to the real estate therein described should be quieted. The court further finds for the defendants Mary P., Elizabeth E. and Edward E. Goodrich on their cross complaint, that their title to the real estate therein described should be quieted."

It is insisted on behalf of the appellees that the special finding can not be regarded as constituting part of the record.

It appears to have been made upon the request of the defendants, and it was signed by the judge. It is contended that it was necessary for the court to order expressly that the finding should be made a part of the record. The learned coun-

sel seem to have taken this position through their belief that this court has recently so ·decided; but the reverse of this is ·. true.    *State, ex rel.*, v. *St. Paul,· etc., T. P. Co.*, 92 Ind. 42. See *McClellan* v. *Bond,* 92 Ind. 424; *McFadden* v. *Wilson,* 96 Ind..253.

. By section 11 of the act of our General Assembly to regulate the sale of swamp lands, etc., approved May 29th, 1852, 1 G. & H. 599, said county treasurer's certificate of entry was made evidence of title to the land mentioned therein in the person in whose name it issued; it was evidence of legal title. *Edmondson* v. *Corn*, 62 Ind. 17.

By the act of Congress of September 28th, 1850, R. S. of U. S., section 2479, a copy of which is inserted on page 737, 1 G & H., the whole of the swamp and overflowed lands within this State, made unfit thereby for cultivation, which remained unsold at the passage of that act, were thereby granted to this State.   The terms of the act before the fourth section referred to the State of Arkansas.   By the fourth section the provisions of the act were extended to all the other States of the Union.   By the second section of this statute, it was made " the duty of the secretary of the interior, as. soon as may be practicable after the passage of this act, to make out an accurate list and plàts of the lands described as aforesaid, and transmit the same to the Governor of the State of Arkansas, and, at the request of said Governor, cause a patent to be issued to the State therefor ; and on that patent, the fee simple to said lands shall vest in the said State of Arkansas, subject to the disposal of the Legislature thereof."

The secretary of the interior did not perform his duty according to the terms of the statute, but lists were otherwise made, and it appears by the special finding that, on the 22d of January, 1858, the United States conveyed by patent to this State the land in controversy, as swamp and overflowed lands, under said act of Congress.   It has been held uniformly by the courts that said act of Congress was a grant *in præsenti.*

In *Fletcher* v. *Pool,* 20 Ark. 100, it was said that said act

was a present grant, vesting in the State, *ex proprio vigore*, from the day of its date, title to all the land of the particular description therein designated, wanting nothing but the definition of boundaries to make it perfect. It was held that a State statute of January 11th, 1851, providing "that the board of swamp land commissioners are hereby empowered to demand of, and receive from, the proper accounting officers of the United States, indemnity, at the rate of one dollar and twenty-five cents per acre, for any swamp and overflowed lands within this State, which have been sold or disposed of by the United States, since the 28th day of September, 1850, or which may hereafter be sold, and disposed of by the United States," was not a confirmation of the title in a person to such lands purchased by him from the United States after the passage of said act of Congress.

In speaking of the purport of said State statute, it was said: " Portions of the swamp and overflowed lands had been sold by the United States, through the inadvertence of her officers, or from an erroneous opinion entertained as to the rights of the State. The purchasers were without title, and the United States had their money. The State had received nothing for her lands, and had not parted with her title." And it was held that a purchaser from the United States could derive no title directly from said State statute, though he might do so indirectly, by showing that the State had received the indemnity mentioned in that act, provided no private rights had attached in the meantime by purchase from the State; that the receipt of the indemnity by the State would be treated in equity as a sale of the lands by the State to the United States, and the title thus acquired by the United States would enure, by way of estoppel, to her grantee. In that case Pool, the plaintiff, who had entered, on the 10th of January, 1851, at the United States land-office, and received a certificate of entry, was held to take nothing as against one who entered at the State swamp land office afterwards, in 1851, knowing that the land had been previously entered by Pool.

In *Whiteside County* v. *Burchell*, 31 Ill. 68, it was held that the lands were granted unconditionally to the State, in fee simple, "to be at the uncontrolled disposal of its Legislature."

In *Dart* v. *Hercules*, 34 Ill. 395, it was held that the act of Congress vested the legal title of such lands as were selected and appropriated under its provisions in the State.

In *Allison* v. *Halfacre*, 11 Iowa, 450, it was held that the act of Congress granting swamp lands to the State operated, *ex proprio vigore*, to pass the title at once; that the subsequent selection and patenting were required for the purpose of fixing their location and description.

In *Fore* v. *Williams*, 35 Miss. 533, it was held that the act of Congress was a legislative grant, taking effect upon all the lands referred to from the date of its passage. In that case the plaintiff held by patent from the State, of March 20th, 1855; while the defendant claimed under receipt of the register of the land-office for money paid by defendant for the entry of the land at that office, dated November 3d, 1854. The list of swamp lands was approved by the secretary of the interior January 31st, 1855. The court sustained the plaintiff's claim of title. In that case it was held that no patent was necessary to convey the lands to the State.

In *Funston* v. *Metcalf*, 40 Miss. 504, it was held that without the approval of the secretary of the interior expressly appearing in evidence, or by necessary inference from a patent to the State for the particular land in controversy, no title vested in the State and none could be conveyed by the State. There the particular land had been omitted from the list of lands reported by the commissioners appointed to select swamp lands for the State to the commissioner of the general land-office of the United States, before its approval by him, on the ground that the land had been purchased previously, on the 15th of October, 1851, from the United States by one under whom the defendant claimed.

In *Edmondson* v. *Corn, supra,* this court said : "The acts

of Congress upon the subject of swamp lands, by their own force, conveyed the title to the State." See, also, *Murphy* v. *Ewing*, 23 Ind. 297 ; *Nitche* v. *Earle*, 88 Ind. 375 ; *Hamilton* v. *Shoaff*, 99 Ind. 63.

The decisions of the Supreme Court of the United States have controlling force in the interpretation and construction of acts of Congress. *French* v. *Fyan*, 93 U. S. 169, was ejectment. The land was certified in March, 1854, to the Missouri Pacific Railroad Company, as part of the land granted to aid in the construction of said road, by the act of Congress of June 10th, 1852; and the plaintiff, by purchase made in 1872, became vested with such title as this certificate gave. To overcome this *prima facie* case, defendant gave in evidence the patent issued to Missouri in 1857, under the swamp land act, and it was admitted that defendant had a regular chain of title under this patent. The plaintiff offered to prove that the land was not wet and unfit for cultivation. The court said : " This court has decided more than once that the swamp land act was a grant *in præsenti*, by which the title to those lands passed at once to the State in which they lay, except as to States admitted to the Union after its passage. The patent, therefore, which is the evidence that the lands contained in it had been identified as swamp lands under that act, relates back and gives certainty to the title of the date of the grant. As that act was passed two years prior to the act granting lands to the State of Missouri, for the benefit of the railroad, the defendant had the better title on the face of the papers, notwithstanding the certificate to the railroad company for the same land was issued three years before the patent to the State, under the act of 1850. For while the title under the swamp land act, being a present grant, takes effect as of the date of that act, or of the admission of the State into the Union, when this occurred afterwards, there can be no claim of an earlier date than that of the act of 1852, two years later, for the inception of the title of the railroad company."

It was held that the second section of the act of 1850 de-
volved on the secretary of the interior, as the head of the
department which administers the affairs of the public lands,
the duty, and conferred on him the power, of determining
what lands were of the description granted by that act, and
made his office the tribunal whose decision on that subject
was to be controlling.

In *Martin* v. *Marks*, 97 U. S. 345, it was said: " The title
related to the date of the grant, namely, September 28th,
1850, and superseded any subsequent grant or evidence of
title issuing from the United States."

In *Rice* v. *Sioux City*, etc., *R. R. Co.*, 110 U. S. 695, what
was said in *French* v. *Fyan, supra,* concerning States admit-
ted after the passage of said swamp land act of 1850, was
spoken of as not being necessary to the decision of that case,
and was disapproved, it being held that said act of 1850 re-
lated only to States in existence when it passed.   It was said,
per WAITE, C. J.: " That the swamp land act of 1850 op-
erated as a grant *in præsenti* to the States then in existence
of all the swamp lands in their respective jurisdictions is
well settled."

The fact that a patent was issued to this State by the United
States in 1858 for the land in dispute, as swamp and over-
flowed land, under the swamp land act of Congress of 1850,
is, under the cases which we have cited, conclusive evidence
that this particular land was selected for the State, as such
swamp land, and that the selection was approved by the
proper authority, and establishes title to the particular land
in this State, commencing on the 28th of September, 1850.
It follows that the State's grantee has the title to said land,
and that the evidence of adverse title received from the
United States since that date, through which the appellees
claim, is of no avail against the title so acquired under said
swamp land act, unless it appears that the State has relin-
quished its title to the United States.   The possession of the
appellees could not be notice of a better title than they had.

If the Governor could reconvey the land to the United States without a particular recital of power, as to which we make no decision, he could not so reconvey without authority from the Legislature. His general authority as an officer of the State included no such power. The learned and careful counsel for the appellees have not been able to refer to any statute conferring such authority, and we have not been able to find such a statute. Counsel do not contend that the general authority of the Governor embraces power to convey the State's lands, nor that he had any express legislative authority. But it is thought by them that the intention of the United States and of this State to do equity to *bonâ fide* locators of swamp lands, as lands of the general government, who became such after the passage of the swamp land act of 1850, "while the title was in doubt, because it had not been ascertained what lands were wet," may be gathered from the legislation of Congress and of the State, and that, in view of such legislation, the State is estopped to claim that the release signed by the Governor was unauthorized, and that such release was a sufficient expression of the consent of the State to authorize the United States to issue the patent to Ellsworth. We think that the Governor's deed, being outside of his official duty, was of no validity, and that if the location of the land by Ellsworth, and the issuing of the patent in his name, conferred any interest in the land, it must be because of something in itself sufficient for such a result, unaided by the Governor's deed.

It is true that because of want of prompt performance by the secretary of the interior of the requirements of section 2 of the swamp land act of Congress of 1850, and the failure to discontinue the entering of lands at the land-offices of the United States, together with misapprehension of the exact legal rights arising under said act of Congress, there resulted confusion and the purchasing and locating at those offices of some of the lands which, by the terms of that statute, belonged to the State. This was true elsewhere, as well as in Indiana.

.And in view of this, Congress enacted statutes which provided for reimbursing the States for lands so entered, and for the making of patents to the purchasers and locators. And this State, manifesting from the beginning and constantly an intention to preserve to itself all the benefits of said grant, passed statutes providing for the collection from the general ·government of compensation for lands so entered. But there was no act of our Legislature which can be construed as contemplating a release of the State's title to any of said lands without such compensation for the lands released, and there was no act of Congress showing a contrary purpose on its part.

The statutes to which we have been so referred by counsel .are the acts of Congress of March 2d, 1855, and March 3d, 1857 (R. S. U. S., sections 2482, 2483, 2484), and the acts of ·our General Assembly of February 14th, 1851, section 15 (Acts 1851, p. 110), May 29th, 1852, June 14th, 1852, March 4th, 1853, section 3, March 5th, 1855, March 5th, 1857, section 2 (1 G. & H. 597 to 609).

We may mention also the act of March 6th, 1865, Acts 1865, Reg. Sess., 47, which, recognizing the fact that the United States conveyed to this State by deed dated November 7th, 1857, about four thousand acres of land, in lieu of land that had been entered at land-offices in this State while the selection of lands was being made and after the passage of the swamp land act of Congress, empowered the State auditor and treasurer to sell the lands so conveyed, under the rules and regulations of the swamp land act of May 29th, 1852, *supra.*

If for any particular lands of those granted by the swamp land act of 1850 the State thus received compensation instead of the lands, this fact, in view of such legislation, would prevent the State's grantee from questioning a title derived from the United States to such particular lands. But while this ·does not appear to be true in reference to the particular land in controversy, it does affirmatively appear that as late as 1858

the State received from the United States a patent for this particular land. This indicates that the United States did not give, and that the State did not accept, money or other land or any consideration instead of said particular land.

If, as seems to be supposed by counsel, the fact that land so granted to the State was not selected as swamp land until after it was entered as land of the general government, could affect the title of the State, without a showing that the State has received compensation from the United States for the land in question or has reconveyed it to the United States, a supposition which the authorities do not sustain, it would be needed, as against the State's grantee, that such fact should be found. When the United States issued a patent pursuant to the location of the land warrant, the selection for the State had been approved and a patent had been issued, pursuant to the act of Congress, to the State.

While it appears that the State acquired an absolute title to the land in dispute, it does not appear that it has parted with that title except to the appellant.

Upon these considerations we are of the opinion that the conclusions of law stated by the trial court were erroneous.

Filed May 15, 1885; petition for a rehearing overruled Nov. 4, 1885.