[See 10 Fed. 379.]

SHARP (REISSNER v.). See Case No. 11,689.

## Case No. 12,710.

### SHARP v. STEPHENS et al.

[6 Sawy. 48;[1] 25 Int. Rev. Rec. 313; 8 Reporter, 456; 11 Chi. Leg. News, 415.]

Circuit Court, D. Oregon. Aug. 25. 1879.

PUBLIC LANDS—PATENT TO HUSBAND AND WIFE—NAMES.

In an action at law, a patent to a married settler, under the donation act of Oregon, and

[1] [Reported by L. S. B. Sawyer. Esq., and here reprinted by permission.]

his wife, India, can not be contradicted and avoided by showing that the true wife of such settler was another person named Angeline.

[Cited in Cahn v. Barnes. 5 Fed. 332; Cutting v. Cutting, 6 Fed. 268; Pengra v. Munz, 29 Fed. 836.]

[This was an action of ejectment by Cragir Sharp against James B. Stephens and others.]

W. Scott Bebee. for plaintiff.
Joseph N. Dolph, for defendants.

DEADY, District Judge. The plaintiff, a citizen of California, and claiming to be the successor in interest of India Stephens, the alleged wife of Edward S. Sexton, brings this action against the defendants, citizens of Oregon, to recover the possession of a half section of land, situate in Washington county, the same being the wife's· half of the donation of said Sexton.

The answer contains a detailed statement of the facts of the case. To this there is a demurrer by the plaintiff, and a stipulation by the parties. to the effect that the only question to be determined on the demurrer is, do the facts constitute a legal defense to the action?

The answer states substantially, that in January, 1843, said Edward S. Sexton was lawfully married to his wife, Angeline, in the state of Illinois, who remained his lawful wife until his death; that prior to September 27, 1850, said Sexton left said Angeline in said Illinois, where she has ever since resided, and came to Oregon, where, on March 20, 1850. he unlawfully married India Stephens, with whom he lived and cohabited until his death; that on September 1. 1853. said Sexton settled upon six hundred and forty acres of land, including the premises in controversy, as a married man, under section 4 of the donation act of September 27, 1850, and resided upon and cultivated the same for more than four consecutive years thereafter; that afterwards, on June 31, 1868. in pursuance of the premises. a patent certificate was issued by the proper officers of the local land office for said donation to said Sexton and his wife, the said Sexton then and there fraudulently pretended to said officers that said India was his wife, and thereby procured her name to be inserted therein as the name of his wife; that on May 5, 1873, a patent was issued by the United States for said donation to said Sexton and wife. the south half thereof to the former, and the north half to the latter. and, by reason of the error in said patent certificate as to the name of the wife of said Sexton, the name of said India was wrongfully inserted in said patent as the name of the wife of said Sexton; that after the issue of said patent certificate, said Sexton died intestate. leaving said Angeline and her two children and one grandchild as his only heirs at law: that the defendant, James B. Stephens, is now, and for more than six

years has been, the owner of the interest of said Angeline and children in the premises, and entitled to the possession thereof, and the defendant Dittenthaler is in possession of said premises by permission of said Stephens, and that whatever interest the plaintiff has in said premises is derived from said India, and not otherwise.

The defendant maintains: (1) That a settler under the donation act takes a grant under and by virtue thereof from the date of his settlement, and that therefore the patent is only a record of the previously existing rights of the donee; (2) that one-half of the donation of a married settler inures, by operation of the act, to his wife; and (3) that a patent issued without authority of law is void, and can not affect pre-existing rights; and from these premises seeks to establish the conclusion that this patent, so far as it states and records that the one-half of Sexton's donation, inured to India rather than Angeline, is false and void.

The propositions contained in this argument are undoubtedly sound, and have repeatedly received the sanction of this and the supreme court. But I do not think they authorize the deduction sought to be made from them.

It is not claimed that this patent is in this or any particular void because issued contrary to law, or on account of any fraud or mistake which appears upon its face. Now it is an elementary principle that a patent can not be avoided for matter dehors the record, except by a suit in equity, in which the fraud or mistake is directly pleaded. Mouncey v. Drake, 10 Johns. 25; Polk's Lessee v. Wendal, 9 Cranch [13 U. S.] 98; Doe v. Wenn, 11 Wheat. [24 U. S.] 381; U. S. v. Stone, 2 Wall. [69 U. S.] 535; French v. Fyan, 93 U. S. 169; Moore v. Robbins, 96 U. S. 530.

Who was the wife of the settler, Sexton, is a question of fact, and there is nothing upon the face of the patent which indicates that a mistake was made in its determination by the officers of the land office. To admit evidence in this action to show that Angeline and not India was such wife is to contradict the patent upon such point, and to show a mistake therein by matter outside of itself, which we have seen cannot be done in an action at law.

Sexton was required to make proof in the land office of the facts which entitled him to this donation to himself and wife, one of which was that he was a married man. Strictly speaking, it may be that such fact could be established without proving who the wife was, without naming her; and the only ground upon which the right to make the defense can be put is that the finding and allegation in the patent that the wife of Sexton was India was unnecessary, and may therefore be disregarded as surplusage. But the question of marriage naturally, if not necessarily, includes the inquiry, who

are the parties to it? The land office found that Sexton was a married man because he was the husband, not of Angeline, but of India; and although this latter conclusion appears now to have been an error caused by the false and fraudulent representations of Sexton, yet it cannot be corrected in this action without violating the salutary rule which precludes a patent from being avoided in an action at law for matters not apparent upon its face. The case of French v. Fyan, supra, is like this in principle, and very similar to it in fact. A grant of swamp land was made to the state of Missouri. The statute also made it the duty of the secretary of the interior to select the lands, and cause patents to be issued to the state therefor. A party claiming under one of these patents, being sued by one claiming under a railway grant for the same premises, gave the patent in evidence. The plaintiff then offered to prove by parol that the land described in the patent was not in fact swamp or overflowed, but the offer was refused. The supreme court sustained the ruling. Mr. Justice Miller, who delivered the opinion of the court, quoting the opinion in Johnson v. Towsley, 13 Wall. [80 U. S.] 72, said: "That the action of the land office in issuing a patent for any of the public land, subject to sale by pre-emption or otherwise, is conclusive of the legal title, must be admitted under the principles above stated; and in all courts, and in all forms of judicial proceedings where this title must control, either by reason of the limited powers of the court or the essential character of the proceedings, no inquiry can be permitted into the circumstances under which it was obtained. On the other hand, there has always existed in the courts of equity the power, in certain classes of cases, to inquire into and correct mistakes, injustice, and wrong in both judicial and executive action, however solemn the form which the result of that action may assume when it invades private rights; and by virtue of this power the final judgment of courts of law have been annulled or modified, and patents and other important instruments issuing from the crown or other executive branch of the government have been corrected or declared void, or other relief granted." And although this was a case in which the patent was only the record of a pre-existing grant, the learned justice said it was within "the operation of that rule," and that the court was "of opinion that, in this action at law, it would be a departure from sound principle and contrary to well-considered judgments in this court, and others of high authority, to permit the validity of the patent to the state to be subjected to the test of the verdict of the jury on such oral testimony as might be brought before it. It would be substituting the jury, or the court sitting as a jury, for the tribunal which congress had provided to determine the question, and would be making a patent of

the United States a cheap and unstable reliance as a title for lands which it purported to convey." In my judgment, this case furnishes the rule of decision for the one under consideration. The facts set up in answer, being contradictory of the patent upon the point in controversy, cannot be given in evidence in this action at law, and therefore, whatever may be their effect in equity, they do not constitute a legal defense thereto.

There must be a finding for the plaintiff.

[NOTE. A suit was subsequently brought by the defendants to enjoin the plaintiff from enforcing the judgment obtained by him in the above action. There was a demurrer to the bill, which was overruled, and the relief prayed for was granted. Case No. 13,410.]