## PENGRA *v.* MUNZ.

*(Circuit Court, D. Oregon.* February 14, 1887.)

**1. CERTIFICATION BY THE SECRETARY OF THE INTERIOR OF LANDS TO THE STATE UNDER SWAMP AND WAGON-ROAD GRANTS.**

On March 12, 1860, (12 St. 3,) congress granted the lands that were "wet and unfit for cultivation," within the limits of Oregon, to the state, to be selected by the state from the lands thereafter surveyed, "within two years from the adjournment of the legislature at the next session after notice by the secretary of the interior to the governor of the state that the surveys have been completed and confirmed," and then certified by the secretary of the interior, if found to come within the operation of the act, and patented to the state, on which the fee shall vest in the state. On July 2, 1864, congress granted to the state, to aid in the construction of a military wagon road from Eugene to the eastern boundary of the state, the "alternate sections of the public lands, designated by odd numbers, for three sections in width on each side of said road," as the same may be located. On October 24, 1864, the legislature of the state transferred this grant to the Oregon Central Military Road Company, who in due time constructed the road. On December 27, 1868, the survey of section 21, in township 36, of range 14 east of the Wallamet meridian, was duly confirmed, of which fact the governor of the state had due notice before the session of the legislature held in 1868. On April 18, 1871, the secretary of the interior, on the recommendation of the commissioner of the general land-office, approved the selection of section 21, under the wagon-road grant, and certified the same to said road company as the grantee of the state. On September 16, 1882, said section 21 was erroneously included in a list then certified by the secretary to the state under the swamp-land act, and on January 4, 1883, the commissioner, as to said section 21, recalled said certificate. as having been erroneously made, and notified the governor of the state thereof. On May 11, 1877, the defendant purchased the E. ¼ and the S. W. ¼ of section 21 from the state land commissioners, under the act of October 26, 1870, for the sale of swamp lands, paying $96 down, and the balance ($480) on December 12, 1883, when he received a deed therefor from said commissioners. *Held:* (1) The swamp-land act is a grant to the state on the condition precedent that the selection of lands thereunder is made within the time limited therein, and on failure to do so, the grant lapsed and became of no effect. (2) The legal title to land selected under the swamp-land act does not vest in the state until a patent is issued therefor, which patent, when issued, relates back to the date of the grant. (3) By section 2 of the act of 1860 the duty is devolved on the state to select the lands it claims under the swamp-land act, and present the same for the consideration of the secretary of the interior, whose duty it is to ascertain and determine whether the selections are "wet and unfit for cultivation," within the meaning of said act; and his determination of the question of fact cannot be impeached or questioned elsewhere except in a court of equity for fraud or mistake other than an error of judgment. (4) It was also the duty of the secretary of the interior, by virtue of his general control over the subject of the disposition of the public lands, to ascertain and determine what lands inured to the state or its grantee, the wagon-road company, under the wagon-road grant of 1864, and when he determined that said section 21 inured to the wagon-road company under said act he thereby determined that it did not inure to the state under the swamp-land grant. (5) The certification of section 21 to the state as swamp land by the secretary was a mere clerical error that the department had a right to correct as it did; but the section having already been certified to the grantee of the state under the wagon-road grant, such second certification was simply void and of no effect. (6) The state having in effect procured section 21 to be certified to the plaintiff's grantor under the wagon-road grant, the defendant, as the grantee of the state, is estopped, as against the plaintiff, to assert or maintain that said section ever inured to the state under the swamp-land grant.

**2. DAMAGES FOR WITHHOLDING REAL PROPERTY.**

    A cause of action for damages for withholding the possession of real property may be joined with one for the possession of such property, but it must be separately stated, and the statement must contain all the facts necessary to support a separate action thereon.

**3. TENANT CANNOT DENY HIS LANDLORD'S TITLE.**

    A tenant cannot, during his term, nor during the possession taken or acquired under the lease, deny his landlord's title.[1]

*(Syllabus by the Court.)*

    Action to Recover Possession of Real Property.

    *George H. Williams, Cyrus Dolph,* and *Joseph Simon,* for plaintiff.

    *William H. Effinger* and *Edward Watson,* for defendant.

DEADY, J. This action is brought to recover the possession of the W. ½ of section 21, in township 36 S., of range 14 E. of the Wallamet meridian.

It is alleged in the complaint that the plaintiff is the owner in fee of the premises, and is entitled to the possession thereof, which the defendant wrongfully withholds from him, to his damage $1,000. And, by way of giving the court jurisdiction of an action between parties who do not appear to be citizens of different states, it is further alleged that the plaintiff derives title to the premises under the act of congress of July 2, 1864, entitled "An act granting lands to the state of Oregon to aid in the construction of a military road from Eugene to the eastern boundary of said state;" that the defendant claims to hold said premises under the act of congress of March 12, 1860, entitled "An act to extend the provisions of an act to enable the state of Arkansas and other states to reclaim the swamp lands within their limits, to Minnesota and Oregon, and for other purposes," whereby the question arises through which of these acts the title of the land passed from the United States; and that the same exceeds in value the sum of $500.

In his answer the defendant denies the allegations of the complaint concerning the ownership and right to the possession of the premises, and alleges that he is the owner of and entitled to the possession of the same; which allegations are controverted by the replication.

The case was tried by the court without the intervention of a jury.

The evidence given on the trial consists of certain documents admitted, under stipulation, for their legal effect, and certain oral testimony concerning the value of the use and occupation of the premises, and of a certain fence and ditch which the defendant claims to have constructed on the premises, and also on the question of whether the land is in fact swamp land or not, which oral evidence was received subject to objections for incompetency.

The material facts on which the plaintiff founds his claim are these:

On July 2, 1864, congress, for the purpose of aiding "in the construc-

---

[1] A tenant cannot, during his term, nor until after he has surrendered possession, deny his landlord's title. Rector v. Gibbon, 4 Sup. Ct. Rep. 606; Killoren v. Murtaugh, (N. H.) 5 Atl. Rep. 769, and note.

tion of a military road" from Eugene to the eastern boundary of the state, granted to the state the "alternate sections of the public lands, designated by odd numbers, for three sections in width on each side of said road," to be disposed of by the legislature for such purpose. 13 St. 355. The act contains a proviso reserving from its operation "all lands heretofore reserved to the United States by act of congress or other competent authority." Provision is also made in the act for the disposition of the land when and as often as the governor of the state "shall certify to the secretary of the interior that any ten continuous miles" of the road are completed. The road was to be completed within five years, and, if not, the land then undisposed of was to revert to the United States. But by the act of March 3, 1869, (15 St. 338,) the time for its completion was extended to July 2, 1872. On October 24, 1864, (Sess. Laws, 37,) the state transferred the grant to the Oregon Central Military Road Company, for the purpose and "upon the conditions and limitations" contained in the act of congress making the same. On September 5, 1868, the township 36 south, range 14 east, was surveyed, and the survey approved on December 27th of the same year, of which the governor of the state had due notice before the meeting of the legislature in 1868. On February 16, 1869, the road company filed with the governor of the state a map of the location and line of the road from Eugene to the eastern boundary of the state; and on January 12, 1870, the governor certified that the road, as delineated on said map, was completed, as required by the act of congress and the state legislature, which map and certificate were filed with the secretary of the interior on or before February 28, 1870. On April 18, 1871, the commissioner of the general land-office recommended for approval a list of lands, numbered 2, and described as "lands 'in place,' granted to the state of Oregon" by the acts of congress of 1864 and 1869 aforesaid, "to aid in the construction of a military road" from Eugene to the eastern boundary of the state, which includes the aforesaid section 21, "subject to any valid interfering rights which may have existed at the date of selection;" and on April 21st of the same year the secretary of the interior approved the selection, subject to the same qualification. On June 2, 1871, the Oregon Central Military Road Company conveyed the west half of said section 21 to B. J. Pengra, and the east half of the same to the California and Oregon Land Company. Afterwards, and before the commencement of this action, B. J. Pengra and wife conveyed said west half to the plaintiff herein. It is also specially admitted that the plaintiff has succeeded to and now owns all the estate and interest in said west half that said company ever owned or held therein prior to the commencement of this action.

By the act of June 18, 1874, (18 St. 80,) it is, in effect, recited that congress had "granted," certain lands to the state of Oregon "to aid in the construction of certain military wagon roads" therein, and that there is no law for the issue of "formal patents" therefor; and in effect provides that whenever it appears "from the certificate of the governor" as provided in said acts, that any of said roads has been "constructed and completed," a patent shall issue to the state for said lands, or to any corpora-

tion to whom it may have transferred its interest therein, "as fast as the same shall, under said grants, be selected and certified."

The defendant claims under the act of congress of March 12, 1860, extending the swamp-land act of 1850 over Oregon; and the act of the state legislature of October 26, 1870, (Sess. Laws, 54,) providing for the selection and sale of swamp land "belonging" to the state. This act provides for the selection of such lands by the agents of the state, and the sale of the same in unlimited quantities, at not less than one dollar per acre, the purchaser to pay 20 per centum of the price within 90 days after the selection is completed, and the balance on proof that the land "has been drained, or otherwise made fit for cultivation;" and, if such payment and proof of reclamation are not made within 10 years from the time of the first payment, the land is to revert to the state. It is declared in the act "that all swamp land which has been successfully cultivated in either grass, the cereals, or vegetables for three years shall be considered as fully reclaimed."

The premises are situated east of the Cascade mountains, on Sprague river, in Lake county. In 1872 the defendant settled on the adjoining section 22, and on May 11, 1877, purchased the E. ½ and the S. W. ¼ of section 21, of the state land commissioners, under the swamp-land act, paying $96 thereon, or 20 per centum of the price; and on December 12, 1883, paid said commissioners $480, the balance of the purchase price, and obtained a deed from them for said portions of the section. Between the date of his purchase from the state and the commencement of this action the defendant built a fence and cut a ditch across the north side of the section, in connection with section 22, and used the land for pasture, and making hay from the wild grass. The defendant testifies that a half mile of this fence is on the east half of section 21, and one-fourth of the ditch, and that they are worth $100 each. He also testifies that section 21 is more or less overflowed and swampy.

On September 14, 1882, the commissioner of the general land-office submitted to the secretary of the interior for approval a list of lands, numbered 5, "inuring to the state of Oregon" under the swamp-land acts of 1850, and 1860, which included said section 21; and on September 16th said secretary approved the same. On January 4, 1883, said commissioner wrote to the governor of the state, informing him that said section was "erroneously" included in said list 5, the same having been theretofore "certified to the state for the Oregon Central Military Road Company, under the act of July 2, 1864, and included in list numbered 2, approved April 12, 1871." On June 25, 1880, the plaintiff took a lease of the north half of the section for one year from the California & Oregon Land Company for $80.

By the act of March 12, 1860, (12 St. 3,) the swamp-land act of 1850 was extended over Oregon, with a proviso that the selections from the then surveyed lands shall be made within two years from the adjournment of the legislature at its next session after March 12, 1860; and, as to all lands thereafter surveyed, "within two years from such adjournment at the next session, after notice by the secretary of the interior to

v.29F.no.16—53

the governor of the state that the surveys have been completed and confirmed."

The swamp-land act has been said to be a grant *in præsenti*. But it does not pass the legal title. Before that vests in the state, the secretary must ascertain and determine what lands come within its operation, —are "wet and unfit for cultivation,"—and cause a patent to issue to the state therefor. This patent, when issued, may, and doubtless does, relate back to the passage of the act, and in this sense only is it a grant *in præsenti*. Until the patent issues, the legal title is in the United States; and the determination of the question, what are and are not swamp lands within the purview of the act, rests with the secretary of the interior, and his decision, unless impeached for fraud or mistake other than an error of judgment, is final. *French* v. *Fyan*, 93 U. S. 170.

The case of *Railway Co.* v. *Smith*, 9 Wall. 95, only holds that in case the secretary fails to determine the question of whether a subdivision was swamp or not, that the state or its grantee might, when sued for the possession of the same, prove the character of the land, when material to the defense. And in that case the grant to the plaintiff expressly excluded therefrom the lands previously granted to the state by the swamp-land act of 1850, so that the fact of the lands being swamp was itself sufficient to defeat the plaintiff's claim, and might therefore be proven by parol, as a defense to its action to recover possession, in the absence of any determination of the question by the secretary of the interior.

But the reservation in this wagon-road grant is only of lands theretofore "reserved to the United States," which does not include lands otherwise disposed of by the United States. However, the grant for the wagon road being subsequent in point of time to that of the swamp land, the former cannot attach to any land within the operation of the latter, unless the same has reverted to the United States for want of selection within the time limited.

The provision (section 2, Act 1860) limiting the time within which the selections must be made, after notice to the governor "that the surveys have been completed and confirmed," is not in the original swamp-land act. It was first made a part thereof, so to speak, when the latter was extended to Oregon. In my judgment, the purport and effect of the section is to devolve on the state the duty of making the selections in the first instance; whereupon it becomes the duty of the secretary to ascertain and determine whether such selections are "wet and unfit for cultivation," within the meaning and terms of the act. But if the selection is not made within the time prescribed, the grant reverts to the United States. The selection within the time is a condition precedent.

The wagon-road grant was a grant *in præsenti* of all the odd-numbered sections on either side of the road, and, as soon as the line of the same was designated, it attached to such sections, and took effect from the date of the act, subject to the condition that the road was completed within the time limited. *Shulenberg* v. *Harriman*, 21 Wall. 60. This condition having been long since duly performed, the grant became absolute in favor of the road company, the grantee of the state. The approval

of the selection of section 21, under the act of 1864, by the secretary of the interior in April, 1871, gave the road company a perfect title thereto. The subsequent passage of the act of 1874, authorizing patents to issue in such cases, did not affect the title already vested. The effect of a patent, when issued under that act, is not to pass the title, but to give the patentee record evidence of an already existing one. *Langdeau* v. *Hanes*, 21 Wall. 529. Wherefore it is of no moment that it does not appear that a patent has issued to the state or its grantee for the premises. The title of the latter was complete on the approval by the secretary in 1874 of the selection of section 21 under the act of 1864.

As has been shown by the terms of the swamp-land act, the fee of any tract of land does not pass to the state until the secretary has ascertained that it comes within its operation, and causes a patent to issue therefor. The official certificate that the land is swamp only gives the state an equity or right to a patent. Such an interest cannot be set up as a defense in this action against the *prima facie* legal title of the plaintiff. But admitting that the listing of the land as swamp vests the fee in the state, and that the patent thereon is a mere formal matter, which follows of course, the listing of section 21 as swamp land in 1882, more than three years after the same was certified to the state under the wagon-road grant, did not change or affect the rights of the parties. Such listing, even if it had been deliberate and intentional, in the face of the fact that the land had already been duly listed to the state under the wagon-road grant, was simply void. *Smith* v. *Ewing*, 23 Fed. Rep. 741. But the truth is, it was a mere mistake,—probably a clerical misprision,—which the department corrected as soon as attention was called to it by the register and receiver of the proper land-office. The power to correct such a mistake is necessarily implied from the power to approve the selection, and is supported by authority. *Carroll* v. *Safford*, 3 How. 460; *LeRoy* v. *Clayton*, 2 Sawy. 493; *Bell* v. *Hearne*, 19 How. 252. And as the act which constituted the mistake was void, and the right to the land had already been duly ascertained and set forth, the result would be the same if it never had been corrected.

The authority to determine to which of the two grants to the state this section 21 properly belonged was vested in the secretary of the interior, generally, by section 441 of the Revised Statutes, which gave him supervision—final control—of the public business relating to the public lands, and specially and particularly as to the grant of swamp land, by the act making the same. In awarding this section to the wagon-road grant, or rather approving of its selection thereunder, the secretary must, in legal contemplation, have decided that it was not swamp. The decision, so far as it appears, was duly made, in the regular course of business, in the administration of the law relating to the subject, and with the evidence contained in the public surveys as to the character of the land before him or within his official reach. The decision that the land belonged to the wagon-road grant was, in legal effect, also a decision that it did not belong to the swamp-land grant. The latter conclusion, under the circumstances, is a necessary element of the former. Nor can this con-

clusion be impeached or contradicted in this action by oral evidence as to the character of the land. Subject to the power of a court of equity in certain cases to correct or set aside the final action of the department for fraud or mistake, not a mere error of judgment, in disposing of the public lands, its decisions on questions of fact cannot be reviewed or called in question elsewhere. *Johnson* v. *Towsley,* 13 Wall. 72; *Sharp* v. *Stephens,* 6 Sawy. 48. Therefore the oral evidence offered by the defendant, concerning the swampy character of this land, is incompetent, and cannot be considered.

The state was the grantee in both these grants. It accepted the land as part .of the wagon-road grant, or allowed its grantee or agent to do so. At least there is no evidence that it ever selected this section under the swamp-land grant, and presented it for certification as part thereof. And while this may have been done, it is morally certain that it was not done until after the premises were certified to the grantee of the state under the wagon-road grant, nor until the grant had lapsed, for want of selection, within the time prescribed. The non-action of the state in this matter probably arose from the fact that it was thought best that the land should go to the construction of the wagon road, which was then regarded as a meritorious enterprise. For long after this swamp-land grant was made no interest was taken in it, nor was it generally understood that there was any considerable quantity of land in the state to which it was at all applicable. For 10 years the state took no steps to secure any land under it, preferring, as it appears, to make its selections under the grants for the benefit of roads and schools. The fact that some portions of these selections were damp enough to be called swamp was no objection to them, but often a recommendation; and in my judgment, it would have been well if that policy had been continued. But, be that as it may, in the meantime this land was formally selected and certified to the state as wagon-road land, with its acquiescence, if not active concurrence, and it is now estopped, as against the plaintiff, to deny that the premises are included in such grant, or to assert that it acquired them under the swamp-land grant. And if the state is so estopped, so is its grantee, the defendant.

The defendant defends for the whole of the W. ½ of section 21, but it does not appear, from his own showing, that he has any claim to the N. ½ thereof. His purchase from the state only includes the E. ½ and the S. W. ¼ of the section. But the claim of the defendant to be the owner of any part of the premises on the facts proven must fail on either of the following grounds: (1) At and before the defendant's purchase from the state under the swamp-land grant, the right of the state thereunder had lapsed and become of no effect. (2) The land was already certified to the grantee of the state under the wagon-road grant by the secretary of the interior, which certification is a final decision of the question as to the character of the land, and the grant under which it properly belonged, by a tribunal having exclusive jurisdiction of the same. (3) The defendant, as the grantee of the state, against the plaintiff, is estopped to assert or maintain that the premises inured to the state under the

swamp-land grant, because the latter, in effect, procured the same to be certified to the plaintiff's grantor under the wagon-road grant.

In conclusion, I find that the plaintiff is the owner of the land in fee, and entitled to the possession thereof. But no damages can be received for the occupation of the premises under the allegation in the complaint that the defendant wrongfully withholds the possession of the same from the plaintiff, to his damage $1,000. An action to recover damages for the wrongful occupation of real property is the equivalent of the common-law of action of trespass for mesne profits. A cause of action for damages for withholding the possession of real property may be joined with one to recover such possession. But it must be separately stated, and the statement must contain facts sufficient to support a separate action thereon. Ordinarily, only nominal damages can be recovered on the *ad damnum* clause for an ouster, in an action to recover possession of real property. *Wythe* v. *Myers*, 3 Sawy. 598; *Larned* v. *Hudson*, 57 N. Y. 151.

The evidence as to the value of the rents and profits of the land was admitted on the trial, subject to the objection that the complaint contained no statement of a cause of action therefor. The ruling on this point makes it unnecessary to consider the character or value of the improvements put on the land by the defendant. The plaintiff can recover nothing for rents and profits, and therefore there is nothing to set off the value of the improvements against. Probably this result is not materially unjust to either party.

In support of my conclusions in this case, I refer generally to *Cahn* v. *Barnes*, 7 Sawy. 48, 5 Fed. Rep. 326. The important questions involved herein were considered in that. I have gone carefully over the ground again, in the light of the able and exhaustive argument of counsel for the defendant, but find no cause to change my opinion on the subject.

There must be a finding for the plaintiff that he is the owner of the premises, and entitled to the possession thereof.