### FRENCH *v.* FYAN ET AL.

1. The act of Sept. 28, 1850 (9 Stat. 519), granting swamp-lands, makes it the duty of the Secretary of the Interior to identify them, make lists thereof, and cause patents to be issued therefor. *Held*, that a patent so issued cannot be impeached in an action at law, by showing that the land which it conveys was not in fact swamp and overflowed land.
2. *Railroad Company* v. *Smith*, 9 Wall. 95, examined, and held not to conflict with this principle.

ERROR to the Circuit Court of the United States for the Eastern District of Missouri.

Argued by *Mr. D. T. Jewett* for the plaintiff in error, and by *Mr. Montgomery Blair* for the defendants in error.

MR. JUSTICE MILLER delivered the opinion of the court.

This action of ejectment was tried by the court below without a jury, by agreement of the parties; and the only finding made by the court was a general one in favor of defendant, on which judgment was rendered in bar of the action.

The single question in this case is raised on the refusal of the court to receive oral testimony to impeach the validity of a patent issued by the United States to the State of Missouri for the land in question, under the act of 1850, known as the " swamp-land grant," the purpose being to show by such testimony that it was not in point of fact swamp-land within the meaning of that act.

The bill of exceptions shows that the land was certified, in March, 1854, to the Missouri Pacific Railroad Company, as part of the land granted to aid in the construction of said road by the act of June 10, 1852; and the plaintiff, by purchase

made in 1872,. became vested with such title as this certificate gave.

To overcome this *prima facie* case, defendant gave in evidence the patent issued to Missouri, in 1857, under the swamp-land act, and it was admitted that defendant had a regular chain of title under this patent.

It was at this stage of the proceeding that the plaintiff offered to prove, in rebuttal, by witnesses who had known the character of the land in dispute since 1849 till the time of trial, that the land in dispute was not swamp and overflowed land, made unfit thereby for cultivation, and that the greater part thereof is not and never has been, since 1849, wet and unfit for cultivation.

But the court ruled, that, since the defendant had introduced a patent from the United States to the State for the said land under the act of Sept. 28, 1850, as swamp-land, this concluded the question, and the court, therefore, rejected said parol testimony; to which ruling of the court the plaintiff then and there excepted.

This court has decided more than once that the swamp-land act was a grant *in præsenti*, by which the title to those lands passed at once to the State in which they lay, except as to States admitted to the Union after its passage. The patent, therefore, which is the evidence that the lands contained in it had been identified as swamp-lands under that act, relates back and gives certainty to the title of the date of the grant. As that act was passed two years prior to the act granting lands to the State of Missouri, for the benefit of the railroad, the defendant had the better title on the face of the papers, notwithstanding the certificate to the railroad company for the same land was issued three years before the patent to the State, under the act of 1850. For while the title under the swamp-land act, being a present grant, takes effect as of the date of that act, or of the admission of the State into the Union, when this occurred afterwards, there can be no claim of an earlier date than that of the act of 1852, two years later, for the inception of the title of the railroad company.

The only question that remains to be considered, is, whether, in an action at law in which these evidences of title come in

conflict, parol testimony can be received to show that the land in controversy was never swamp-land, and, therefore, the patent issued to the State under that act is void.

The second section of the swamp-land act declares, "That it shall be the duty of the Secretary of the Interior, as soon as practicable after the passage of this act, to make out an accurate list and plats of the land described as aforesaid, and transmit the same to the governor of the State, and, at the request of the governor, cause a patent to be issued to the State therefor, and on that patent the fee-simple to said lands shall vest in said State, subject to the disposal of the legislature thereof." It was under the power conferred by this section that the patent was issued under which defendant holds the land. We are of opinion that this section devolved upon the Secretary, as the head of the department which administered the affairs of the public lands, the duty, and conferred on him the power, of determining what lands were of the description granted by that act, and made his office the tribunal whose decision on that subject was to be controlling.

We have so often commented in this court on the conclusive nature and effect of such a decision when made and evidenced by the issuance of a patent, that we can do no better than to repeat what was said in the case of *Johnson* v. *Towsley*, 13 Wall. 72, where the whole question was reviewed both on principle and authority. In that case, it had been strongly argued that the specific language of one of the statutes concerning preemption on the public lands made the decision of the Commissioner of the General Land-Office conclusive everywhere and under all circumstances. The court responded to this argument in this language: —

"But while we find no support to the proposition of the counsel for plaintiffs in error in the special provisions of the statute relied on, it is not to be denied that the argument is much stronger when founded on the general doctrine, that when the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its authority, is conclusive upon all others. That the action of the land-office in issuing a patent for any of the public land, subject to sale by pre-emption or otherwise, is conclu-

sive of the legal title, must be admitted under the principle above
stated; and in all courts, and in all forms of judicial proceedings
where this title must control, either by reason of the limited powers
of the court or the essential character of the proceedings, no inquiry
can be permitted into the circumstances under which it was ob-
tained.   On the other hand, there has always existed in the courts
of equity the power, in certain classes of cases, to inquire into and
correct mistakes, injustice, and wrong in both judicial and execu-
tive action, however solemn the form which the result of that action
may assume, when it invades private rights; and by virtue of this
power the final judgments of courts of law have been annulled or
modified, and patents and other important instruments issuing from
the crown or other executive branch of the government have been
corrected or declared void, or other relief granted."

We see nothing in the case before us to take it out of the
operation of that rule; and we are of opinion that, in this action
at law, it would be a departure from sound principle, and con-
trary to well-considered judgments in this court, and in others
of high authority, to permit the validity of the patent to the
State to be subjected to the test of the verdict of a jury on such
oral testimony as might be brought before it.  It would be sub-
stituting the jury, or the court sitting as a jury, for the tribu-
nal which Congress had provided to determine the question,
and would be making a patent of the United States a cheap
and unstable reliance as a title for lands which it purported to
convey.

The learned judge of this court, who presides in the Califor-
nia circuit, has called our attention to a series of decisions of
the Supreme Court of that State in regard to this swamp-land
grant, commencing with 27 California Reports, 87, in which a
different doctrine is announced.  But with all the respect we
have for that learned court, we are unable to concur in the
views therein expressed.  The principle we have laid down is
in harmony with the system which governs the relations of the
courts to the officers of the executive departments, especially
those having charge of the public lands, as we have repeatedly
decided, and we must abide by them.

We do not mean to affirm that there is any thing in the case
before us, as it is here presented, which would justify a resort

to a court of chancery; we merely mean to express our conviction, that the only mode by which the conclusive effect of the patent in this case can be avoided, if it can be done at all, is by a resort to the equitable jurisdiction of the courts.

The case of *Railroad Company* v. *Smith,* 9 Wall. 95, is relied on as justifying the offer of parol testimony in the one before us. In that case, it was held that parol evidence was competent to prove that a particular piece of land was swamp-land, within the meaning of the act of Congress.

But a careful examination will show that it was done with hesitation, and with some dissent in the court. The admission was placed expressly on the ground that the Secretary of the Interior had neglected or refused to do his duty; that he had made no selection or lists whatever, and would issue no patents, although many years had elapsed since the passage of the act. The court said, " The matter to be shown is one of observation and examination; and whether arising before the secretary, whose duty it was primarily to decide it, or before *the court whose duty it became, because the secretary had failed to do it,* this was clearly the best evidence to be had, and was sufficient for the purpose." There was no means, as this court has decided, to compel him to act; and if the party claiming under the State in that case could not be permitted to prove that the land which the State had conveyed to him as swamp-land was in fact such, a total failure of justice would occur, and the entire grant to the State might be defeated by this neglect or refusal of the secretary to perform his duty. *Gaines* v. *Thompson,* 7 Wall. 347; *Secretary* v. *McGarrahan,* 9 id. 298; *Litchfield* v. *The Register and Receiver,* id. 575.

There is in this no conflict with what we decide in the present case, but, on the contrary, the strongest implication, that if, in that case, the secretary had made any decision, the evidence would have been excluded.      *Judgment affirmed.*