CUMMINGS, *et al.*, *Appellants*, v. POWELL.

### In Banc, June 6, 1893.

1. Land Title: GOVERNMENT PATENT: OFFICERS. The validity of a government patent for land, though in due form, is, even in actions at law, subject at all times to the inquiry whether the officers of the government who issued it had the lawful authority to make the conveyance of title. (*97 Mo. 524 affirmed.*)

2. ———: ———. Where such officers act without authority in issuing the patent, *e. g.*, if the land purported to be conveyed by them had never been within their control or had been withdrawn therefrom when they issued the patent, their act in so doing was not merely voidable but void.

3. ———: ———: ———: PAROL EVIDENCE. The want of authority of the officers to act in such case may be shown by parol evidence.

4. ———: ———: ———: SCHOOL LAND. The act of congress of June 15, 1864, conveyed the title to an unclaimed lot lying in the common fields of St. Louis as they existed in 1803 and 1812 to the State of Missouri for the support of its schools and therefore the government had no title thereto upon which the subsequent act of June 30, 1864, could operate.

*Appeal from St. Louis City Circuit Court*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*D. T. Jewett* for appellants.

(1) The surveyor general and the recorder of land titles, the parties specified in the New Madrid act to make the locations thereunder, decided that the land covered by United States survey 2712 was land, the sale of which was authorized by law as specified by said act. (2) That the location and survey duly returned to the recorder and by him approved and recorded, gave to the locator an equitable title to the land covered by

said survey, not only good against everybody else, but also good against any subsequent act of the government, has been repeatedly decided by the Supreme Court of the United States. *Bagnell v. Broderick,* 13 Pet. 436; *Barry v. Gamble,* 3 How. 51; *Lessieur v. Price,* 12 How. 60; *Rector v. Ashley,* 6 Wall. 142; *Gibson v. Chouteau,* 13 Wall. 92; *Mackay v. Easton,* 19 Wall. 633; Hot Springs cases (*Rector v. United States*) 2 Otto, 712. (3) The defendant has neither a paper title nor a title by adverse possession. He is a naked trespasser and as such has no right to resist a title emanating from the United States. *Hunter v. Hemphill,* 6 Mo. 106; *Sarpy v. Papin,* 7 Mo. 505; *Gibson v. Chouteau,* 29 Mo. 565; *Bagnell v. Broderick,* 13 Pet. 565; *Smelting Co. v. Kemp,* 104 U. S. 647. (4) This case is to be distinguished from *Glasgow v. Baker,* commonly called the *School Case* (85 Mo. 573). In that case there was only a reservation of the sixteenth section for the schools and the government never made an express appropriation of that land to the schools.

*Alexander Martin* for respondent.

(1) The court in its instructions, given at the instance of the defendant, declared that the lots of Grand Prairie Fields whether formally confirmed to individuals or not, were reserved from location and sale when the Conway location and survey were made and that Conway and his representatives could acquire no right, title or equity to such lots by virtue of their location and survey. The question as presented has been solved in defendant's favor by the following decisions: *Glasgow v. Baker,* 85 Mo. 559, affirmed on appeal to the United States Supreme Court in 128 U. S. 560; and in *Cummings v. Powell,* 97 Mo. 534. (2) This question was also settled on the former appeal.

Any part of a case settled on an appeal is conclusive on the parties in the same case in other appeals. *Adair Co. v. Ownby*, 75 Mo. 382; *Conroy v. Iron Works*, 75 Mo. 651; *Gaines v. Fender*, 82 Mo. 497; *Shroyer v. Nickell*, 67 Mo. 589.

MACFARLANE, J.—This is an action of ejectment to recover a part of lot thirty-eight in Peter Lindell's second addition to the city of St. Louis. The facts in the case are clearly stated in the opinion of the court on a former appeal, reported in 97 Mo. 524, to which reference is made.

On the last trial, no reliance was placed on the statutes of limitation by defendant, and the circuit court found that the location of New Madrid certificate number three hundred and forty-eight, issued to James Conway, under which plaintiffs claimed title, was made upon land lying within Grand Prairie common fields, and held that these fields were not, at the time, subject to sale and that therefore the location was void, and plaintiffs failed to show title upon which they could recover. This ruling was in accord with the decision of this court on that appeal.

It was held, in substance, on the former appeal: (1) That the act of February 17, 1815, for the relief of inhabitants of New Madrid county who suffered from earthquakes, only authorized persons owning injured lands to locate a like quantity on public lands, the sale of which was *authorized by law.*

(2) That under the act of 1812, the Grand Prairie common field lots were reserved from sale whether confirmed to the inhabitants of the town on account of cultivation, or reserved to the use of the public schools.

(3) That the limitation on the reservation to the public schools to one-twentieth part of the whole lands

did not authorize the sale of the remaining lots until those for school purposes had been designated and set off.

(4) That the validity of neither the confirmation to inhabitants nor the reservation for the support of the schools depended upon a previous general survey of the out boundary of the commons.

(5) That the common field lots had an existence and location independent of any future survey and the surveyor had no discretion as to what lots should be included within the out boundary.

(6) That by the act of June 15, 1864, the United States granted to the state of Missouri for the use of the public schools all lots and parcels of land in the Grand Prairie common fields, which had not been before disposed of, and when the act of June 30, 1864, granting to James Conway and his legal representatives the land upon which his New Madrid certificate had been located was passed, the title of the United States had already been vested in the state of Missouri under the former act.

These questions, we take it, were settled by the former decision and will not be re-considered.

Plaintiff now argues that the decision is in irreconcilable conflict with two opinions of the supreme court of the United States in cases of *Ehrhardt v. Hogaboom*, 115 U. S. 67, and *French v. Fyan*, 93 U. S. 169. The point of conflict is said to lie in the fact that those cases hold that an intruder in possession of land can not show by parol evidence, against a patent, or other evidence of title from the government to said land, that the officer or agent giving the evidence of title violated his duty, while, on the trial of this case, such evidence was allowed, under authority of the former decision of this court.

We do not think the two cases cited analogous to this one. The former of them held that an intruder into the possession of land would not be permitted to show by parol evidence, as against one claiming under a patent, that the property claimed was swamp land. The court in that case says: "A patent of the United States, regular on its face, cannot, in an action at law, be held inoperative as to any lands covered by it, upon parol testimony that they were swamp and overflowed, and therefore unfit for cultivation, and hence passed to the state under the grant of such land on her admission into the Union." In the latter case, it was held that parol evidence was not admissible to show that land, covered by a patent to Missouri, under the swamp land act, was not in fact swamp land. That the decision of the secretary of the interior, who was authorized to determine what lands were swamp and overflowed lands, could not be overcome in that manner.

Plaintiffs insist that from 1822 they held the equitable title under a regular certificate for a patent from the recorder of land titles, issued after a full compliance with all the requirements of the act of 1815, and also held the legal title under the act of June 30, 1864; and that the official acts of the surveyor and recorder in locating this land and granting the certificate for a patent can no more be impeached by parol evidence, by defendant, than could the decision of the Secretary of the Interior in designating swamp land.

It is well settled under the decisions of this state and of the United States, that even in actions at law, the validity of a patent, though in due form, is subject at all times to the inquiry whether the officers of the government who issued it "had the lawful authority to make a conveyance of the title. But if those officers acted without authority; if the land which they purported to convey had never been within their control,

or had been withdrawn from that control at the time they undertook to exercise such authority, then their act was void—void for want of power in them to act on the subject-matter of the patent, not merely voidable. * * * It is, nevertheless, a clear distinction, established by law, and it has been often asserted in this court, that even a patent from the government of the United States, issued with all the forms of law, may be shown to be void by extrinsic evidence, if it be such evidence as by its nature is capable of showing a want of authority for its issue.'' These extracts from the opinion of Justice MILLER in *Doolan v. Carr*, 125 U. S. 625, and the cases cited are sufficient to show the recognized rule.

It is insisted that the principles announced in the foregoing opinion only apply to cases where there was a conflict between parties each claiming under a title from the government. It cannot be denied that the title to this land passed from the United States under one or the other of the acts of June, 1864. If the location of the New Madrid certificate was valid, and passed to Conway the equitable title, then there can be no doubt that the act of June 30, 1864, by operation of the doctrine of relation, carried to plaintiffs, who are the legal representatives of Conway, the absolute title to the land. If, on the other hand, the location of the certificate was void, as was held in the former appeal, for the reason that the act of 1812 withdrew the land from the control of the officers of the government who undertook to allow the location and grant a certificate for a patent, then it is equally clear, that, by the act of June 15, 1864, the title passed out of the United States and vested in the state of Missouri for the use of the schools. So we have here two conflicting claims from the government, and, under the decisions cited, such evidence as by its nature is capable of showing a want

of authority for the location of the certificate was admissible.

By the Act of 1812, the government withdrew from sale these common fields and in 1822, under the act of 1815, the officers of the government granted to Conway or his legal representatives a certificate for a patent to a specific tract of land. The land affected by the act of 1812 was described generally as "common field lots and commons adjoining and belonging to the town or village of St. Louis." These common fields had an existence in point of fact at the date of the act. "A survey would have aided in identifying them but they had been previously defined and located on the face of the earth." (Opinion on former appeal.)

The act of 1812 then had the effect of withdrawing from sale certain defined and specific land. The parol evidence was not offered for the purpose of proving a reservation or conveyance by the United States. These were shown by the acts of congress. If the Conway location had been, in express terms, a part of the Grand Prairie Common Fields, it would have been void upon its face. The parol evidence was offered simply to identify the land which had been reserved, and to show that it included within its boundaries the land to which Conway was afterwards granted a certificate for a patent. Defendant, though an intruder, had the right to defend his possession by showing that plaintiff had no title, was himself attempting an intrusion, and that the valid, legal title and right of possession was in a stranger.

It is contended that the act of June 15, 1864, excepted the Conway location from the grant to the state for the use of the schools, by the use of these words: "Which have not heretofore been disposed of by the United States," in the body of the act, and by its *proviso*. The argument is, that this location had, in

fact, been made, and, whether rightfully or wrongfully done, the government here recognized and validated it. We will answer this contention in the language of THOMAS, J., in an opinion delivered in this case in a division of the court. (20 S. W. Rep. 488.)

"In the first place, we do not think congress, by these acts, intended to create any *new* rights, but simply to grant the title of the United States to those who might be entitled to the lands, leaving conflicting claims to be determined by the courts; and, in the second place, we hold that the exception from the operation of the grant contained in the act of June 15, 1864, applied only to the valid disposition of land, and to adverse rights and titles which had arisen under the law. Speaking of a reservation from a grant of this character, the supreme court of the United States, in *Morton v. Nebraska*, 21, Wall. *(loc. cit.* 673) said: 'When a vested right is spoken of in a statute, it means a right lawfully vested, and this excludes the locations in question, for they were made on lands reserved from sale or entry. If congress had intended to ratify invalid entries like these, they would have used the language of ratification. Instead of doing this, the language employed negatives any idea that congress intended to give validity to any unauthorized location on the public lands.' In 1812, congress had reserved the unclaimed lots in the St. Louis common fields for the support of schools, and at no time afterwards did it indicate in any way a disposition to depart from the purpose of the reservation, or to repudiate the trust thus voluntarily created, but, on the contrary, we may fairly assume that the acts of January 27, 1831, and June 15, 1864, were intended to effectuate that purpose and execute that trust. The land in controversy being an unclaimed lot, lying in the common fields of St. Louis, as they existed in 1803 and 1812, the act of June 15,

1864, conveyed the legal title thereto to the state of Missouri, for the support of schools, and hence, the government had no title upon which the subsequent act of June 30, 1864, could operate."

The case was tried and determined according to correct principles, and the judgment is affirmed. All concur, except BARCLAY, J., not sitting.