Pembroke HUCKINS, Ava S. Huckins and Elizabeth A. Payne, Appellants,

v.

DUVAL COUNTY, FLORIDA, et al., Appellees.

No. 18337.

United States Court of Appeals Fifth Circuit.

Dec. 28, 1960.

Rehearing Denied Jan. 24, 1961.

Herman Ulmer, Jr., Jacksonville, Fla. (Adair, Ulmer, Murchison, Kent & Ashby, Jacksonville, Fla., of counsel), for appellants.

J. Henry Blount, Jacksonville, Fla., Richard W. Ervin, Atty. Gen., Ralph M. McLane, Asst. Atty. Gen., for appellees.

Before JONES and BROWN, Circuit Judges, and CARSWELL, District Judge.

JONES, Circuit Judge.

The appellants brought a suit in the United States District Court for the Southern District of Florida to quiet title to a tract of land. The cause was dismissed for lack of jurisdiction and this appeal is from the order of dismissal. The only question before us is whether a claim is stated giving rise to Federal jurisdiction under 28 U.S.C.A. § 1331,[1] as that section read at the time this action was commenced.

The complaint alleges that the land involved in the suit is a part of a tract granted in 1816 by the King of Spain to Andrew Atkinson. The Spanish grant is alleged to be of

> "A tract of land consisting of four hundred fifty acres, more or less, on the St. Johns River, at the place known by the name of King's Plantation or the Shipyard, joining on the north with the St. Johns River; on the south with pine land; on the east with a creek, which divides said lands of Vincent Ferrer; and on the west with the swamp of the said river St. Johns."

In the deraignment of their title the appellants include the Treaty of Amity,

---

1. "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States."

Settlement and Limits, made between Spain and the United States. By Article II of the Treaty Spain ceded to the United States the territory known as East and West Florida. By Article VIII of the Treaty it was provided that,

"All the grants of land made before the 24th of January, 1818, by his Catholic Majesty, or by his lawful authorities, in the said territories ceded by his Majesty to the United States, shall be ratified and confirmed to the persons in possession of the lands, to the same extent that the same grants would be valid if the territories had remained under the dominion of his Catholic Majesty. But the owners in possession of such lands, who, by reason of the recent circumstances of the Spanish Nation, and the revolutions in Europe, have been prevented from fulfilling all the conditions of their grants, shall complete them within the terms limited in the same, respectively, from the date of this treaty; in default of which, the said grants shall be null and void. All grants made since the said 24th of January, 1818, when the first proposal, on the part of his Catholic Majesty, for the cession of the Floridas, was made, are hereby declared, and agreed to be, null and void." 25 Fla.Stat.Ann. pp. 251, 254.

The appellants also include in their claim of title a reference to two acts of Congress which were enacted to implement certain parts of the Treaty. An Act of May 8, 1822, 3 Stat. 709, provided for Commissioners to be appointed for ascertaining the claims of title to Spanish grant lands in Florida. The Act of February 8, 1827, 4 Stat. 202, confirmed the titles under Spanish grants as determined and reported by the Commissioners. The appellants allege that the grant to Atkinson was approved and confirmed by the Commissioners. The complaint lists a number of instruments which the appellants assert are muniments by which they became vested with Atkinson's tile to the land described in the complaint. It is then alleged that a survey was made by the Federal Government in 1851 which shows a line along the edge of a salt marsh on the north edge of the grant. It is also alleged that a further Government survey was made in 1949 by which the northern boundary of the grant was fixed at the approximate location of the salt marsh line of the 1851 survey. The United States granted land north of this boundary line to the State of Florida and it, in turn, conveyed a part thereof to the appellee, Duval County. The appellants contend that the land lying between the northern boundary as shown on the 1949 survey and the St. Johns River was and is a part of the Atkinson grant and is owned by them. They seek to have their title quieted and the adverse claims of the State and the County removed as clouds upon their title. The Trustees of the Internal Improvement Fund is a body corporate and a statutory agency of the State of Florida which holds title to public lands acquired by the State. Ch. 253, Fla.Stat.Ann. The appellants say these facts show that a Federal question is involved. This is denied by the appellees and the district court has ruled with them.

■ The test of Federal jurisdiction as based upon a Federal question was stated at an early date by Chief Justice Marshall to be whether "the title or right set up by the party may be defeated by one construction of the Constitution or law of the United States, and sustained by the opposite construction." Osborn v. Bank of United States, 9 Wheat. 738, 22 U.S. 738, 6 L.Ed. 204. This test may not be entirely adequate in all cases,[2] but it will suffice here. This test was again set forth in a later decision where it was said,

"How and when a case arises 'under the Constitution or laws of the United States' has been much considered in the books. Some tests

2. 3 Volz, West's Federal Practice Manual 36, § 3093.

are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. [Cases cited.] The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 97, 81 L.Ed. 70.

The same rule, of course applies where a treaty is relied upon. Hidalgo County Water Control and Imp. Dist. No. 7 v. Hedrick, 5 Cir., 1955, 226 F.2d 1, certiorari denied 350 U.S. 983, 76 S.Ct. 469, 100 L.Ed. 851.

■ Here, it may be said, there is a right claimed by the appellants which was created by a treaty and laws of the United States and such right is an essential element of the appellants' cause of action. But it is not such that it will be supported if the treaty or laws receive one construction or effect, and defeated if they receive another.

The appellants, in stating the question involved, make the assertion that the treaty and the congressional acts "should be construed" as fixing the northern boundary of the grant. The appellants, in their complaint, allege that the appellees contend that the congressional acts should be construed as requiring a survey before the title was complete and so authorized the United States to change the boundary of the grant, and hence, the appellants urge, there is Federal jurisdiction. The appellees do not find any such question presented nor do we.

We are unable to see any necessity for a construction of the Treaty or the Acts of Congress in order to make a disposition of the case.

■ The question here is one of conflicting claims as to the boundaries of the land embraced within the Spanish grant to Atkinson. The answer to the question may involve a construction of the grant, a determination of the consequences of the proceedings held and the action taken by the Commissioners, a decision as to the validity of the patent to the State of Florida, or an ascertaining of the effect of the Government surveys. There may be presented some or all of these questions. There may be issues of fact which require adjudication. It is not enough for the plaintiffs to show that their claim is dependent upon a treaty or on an act of Congress or that the adverse claim has its origin in a patent of the United States. To sustain the jurisdiction it must appear from the complaint "that the suit is one which really and substantially involves a dispute or controversy as to a right which depends upon the construction or effect of the Constitution, or some law or treaty of the United States; that the suit, in whole or in part, arose out of such controversy, or that a decision of the case depended upon such construction." Kirklin v. Ellerbe, 5 Cir., 1922, 278 F. 168, 170. The appellants do not make the required showing. The complaint was properly dismissed.

■ It seems to be well settled that there is no Federal jurisdiction, in the absence of diversity of citizenship, unless a Federal question necessarily appears in the plaintiff's statement of his own claim, and the jurisdiction cannot attach by reason of statements in the complaint with respect to a Federal question resulting from anticipated defenses. See Devine v. City of Los Angeles, 202 U.S. 313, 26 S.Ct. 652, 50 L.Ed. 1046; Joy v. City of St. Louis, 201 U.S. 332, 26 S.Ct. 478, 50 L.Ed. 776; Kirklin v. Ellerbe, supra. Under the Florida law the plaintiff in a suit to quiet title must allege the facts showing the claims of the defendants. Tibbetts v. Olson, 91 Fla. 824, 108 So. 679; Brecht v. Bur-Ne Company, 91 Fla. 345, 108 So. 173. Since the claims of the defendants must be set up by a plaintiff, it may be that the facts from which those claims arise can properly be asserted in support of a contention that a Federal question is

**50**

presented. We need not decide this question since we hold that the facts pleaded do not raise a Federal question.

The judgment of the district court is Affirmed.