Wilson **DICKSON**, Appellant,

v.

Mrs. **C. O. EDWARDS** et al., Appellees.

No. 18351.

United States Court of Appeals
Fifth Circuit.

Jan. 13, 1961.

On Rehearing En Banc July 31, 1961.

Rehearing Denied En Banc
Sept. 12, 1961.

Ralph Brock, Lubbock, Tex., for appellant.

Melvin M. Diggs, Asst. U. S. Atty., W. B. West, III, U. S. Atty., Fort Worth, Tex., Morton Hollander, Anthony L. Mondello, Attys., Dept. of Justice, Washington, D. C., for U. S.

J. A. Gooch, Cantey, Hanger, Johnson, Scarborough & Gooch, Fort Worth, Tex., for appellee Mrs. C. O. Edwards.

John Saleh, Saleh & Saleh, Lamesa, Tex., for appellees J. E. Brown and B. A. Young.

Before CAMERON and BROWN, Circuit Judges, and HANNAY, District Judge.

JOHN R. BROWN, Circuit Judge.

The question presented here is the availability of judicial review of a termination of a Conservation Reserve Contract under the Soil Bank Act, 7 U.S.C.A. §§ 1801–1837. After a full hearing the District Court determined that it had no jurisdiction of the complaint by the former tenant. We agree.

As the whole matter turns upon construction of the statute, we may severely capsulate the facts. The Tenant (Dickson) and the Landowner (Mrs. Edwards) entered into a written traditional three-year lease covering a farm in West Texas. By its terms the lease was to expire on December 31, 1957. As rental it provided for the "usual and customary ⅓ of all feed and grain and ¼ of all cotton and cotton seed grown and harvested * *." During the third and last year of the lease (1957), the Landowner and Tenant entered into a Conservation Reserve Contract with the Agricultural Stabilization Conservation Committee. This was approved for the Secretary of Agriculture on April 5, 1957. It was for a period of five years (1957 through 1961) and called for the annual payment of $11 per acre for the conservation reserve acreage specified (437.2). This Soil Bank payment was to be apportioned ⅔rds to the Tenant and ⅓rd to the Landowner.[1] The Tenant's share amounted to approximately $3200 per year.

Late in 1957 the Landowner notified the Tenant that the basic crop lease would not be renewed or extended. New Tenants (Brown and Young) were selected and a new lease was executed for the years 1958–1961. The Landowner notified the ASC County Committee and upon her request representing that the old lease had expired and a new one had been entered into with the new Tenants, the original CRC contract was terminated. A new CRC contract was then executed for the balance of the term by the new Tenants. The effect of this was to cut off the original Tenant Dickson from any Soil Bank payments subsequent to the year 1957. The payments for 1958–1961 were to go to the new Tenants (Brown and Young).

Dickson treated this as a termination of the CRC contract. Under 7 U.S.C.A. § 1831(d) he complained to the County Committee and thereafter to the State Committee. Failing in the neighborhood administrative adjudicatory process he brought suit under 7 U.S.C.A. § 1831(d) seeking a trial de novo of his attack on the validity of the termination. Without getting to the merits of the controversy, either as a matter of Texas law on landlord and tenant, or under the Soil Bank Act, the District Court held that no review of this kind of action was prescribed and hence the Court was without jurisdiction.

In brief, the reasoning was that judicial review is provided only where the Secretary terminates a contract because of a *violation* of the contract. Consequently, the Court concluded, since Dickson did not *violate* the contract and his rights terminated simply because he was no longer the lessee the statutory basis for review was lacking. The result, so Dickson argues with force, is that this is almost to state that if there is doubt about violation judicial review is available, but if there is *no* legal reason whatsoever for terminating a contract, it is free of any judicial scrutiny. That, he claims, is a paradox—if not an absurdity—and surely not contemplated by Con-

---

1. On April 19, 1957, a Soil Bank 1957 Acreage Reserve Agreement was likewise approved calling for the payment of $20 per acre for 380.5 acres allotted to cotton but withdrawn from production. The split was ¾ to the Tenant and ¼ to the Landowner.

gress. Beguiling as is this argument, National Rag & Waste Co. v. United States, 5 Cir., 1956, 237 F.2d 846, a consideration of this complex agricultural program demonstrates that Congress intended this result. It deliberately withheld much from judicial review, for under the system of farmer-manned neighborhood informal courts, Fulford v. Forman, 5 Cir., 1957, 245 F.2d 145, 147, what is permitted to a Federal Court to review is generally first committed to a lay board to decide. This case illustrates why Congress undoubtedly felt it would be unwise under this Act to bring into the Federal domain the resolution of intrinsically local legal controversies so far as they pertain essentially to local adversaries. For that is really what this is all about. This is so because it is Dickson's theory that by virtue of the joint execution of a five-year CRC contract by Landowner and Tenant, the Texas farm lease was thereby impliedly extended beyond December 31, 1957, up through 1961.

█ We may assume *arguendo* that there is some basis for this assertion. The CRC contract contains an express certificate by the signatories Dickson and Mrs. Edwards that they were all of the "producers having any control of the farm during the entire contract period" and were "all of the producers * * * entitled to payment" under the contract. To that extent, especially considering that the Statute requires a minimum of a three-year contract,[2] it might be argued that such an undertaking was as effectual a voluntary extension of the basic farm lease as would be a formal express writing signed by exactly the same parties. But whatever the status *vis-a-vis* Landowner and Tenant, we conclude that the United States and the Secretary of Agriculture were each free of judicial review of the underlying decision that under the contract and the Regulations, the termination of the CRC contract as to Dickson and the effectual substitution of the new Tenants was permitted or required.

Both the Regulations[3] and the CRC contract[4] took into account the possibility that there might be changes within the category of "producers." But whether this was or was not a legal justification for substituting the new Tenants in the place of Dickson was, as a practical matter, left to the Administrator. This followed for two reasons. First, the Act itself prescribes that decisions of the

2. 7 U.S.C.A. § 1831(a).
   "To effectuate the purposes of this chapter the Secretary is authorized to enter into contracts for periods of not less than three years with producers determined by him to have control for the contract period of the farms covered by the contract * * *."

3. 6 C.F.R. § 485.156(a) (Supp.1960).
   " * * * in order for producers on a farm to participate in the conservation reserve program, a Soil Bank Conservation Reserve Contract * * * must be entered into by the producers having control of the farm. The farm owner or owners must sign the contract * * *. The farm operator if other than the owner must also sign the contract. * * If an owner or a tenant-operator who enters into a contract loses control of the farm before the end of the contract period, his successor, if any, as owner or tenant-operator, as the case may be, during the contract period may upon his request be substituted under the contract as owner or tenant-operator by executing a form prescribed by the administrator * * *."

4. The contract provided:
   "8(b). The loss of control of the farm by sale or otherwise by any owner signatory to the contract, or by any cash tenant, standing-rent tenant or fixed-rent tenant who has a lease for the entire contract period and who signed the contract in lieu of the owner, shall terminate the contract as to such producer. In the event of such termination, the producer losing control shall not be entitled to further compensation under the contract and shall refund all Federal cost-shares received by him under the contract unless the producer who acquires his interest in the farm is or becomes a party to the contract and assumes all obligations thereunder. The loss of control by any contract signer shall not affect the rights and obligations of all other producers who signed the contract."

Secretary are final and not reviewable.[5] Mario Mercado E. Hijos v. Benson, 1956, 97 U.S.App.D.C. 298, 231 F.2d 251; Elliott v. United States, D.C.Neb.1959, 179 F.Supp. 758; United States v. Maxwell, 8 Cir., 1960, 278 F.2d 206. And second, and more important, only one decision was made subject to judicial review and as to that the statute carefully fenced it in.

■ The one decision open to judicial review is termination of the contract by the Secretary of Agriculture after a determination by him that a violation has occurred of such a substantial nature as to warrant termination rather than a mere partial forfeiture of benefits. The statute prescribes that the CRC contract shall provide for complete termination or partial forfeiture.[6]

Thereafter the Act outlines the steps to be taken where a violation of the contract is thought to have been committed by a "producer." 7 U.S.C.A. § 1831(d). Termination, as such, is not to occur "unless the nature of the violation is such as to defeat or substantially impair the purposes of the contract." If the State Committee "believes that there has been a violation which would warrant termination of the contract" notice in writing must be given to the producer. Within thirty days the producer may demand a hearing before the County Committee which in turn reports its conclusions to the State Committee. Upon such report and other information available to the State Committee, it must then determine "whether there has been a violation which would warrant termination of the contract." Written notice of that determination must be given to the producer and if he is then "aggrieved by such determination" he may obtain review in the District Court by filing a complaint within ninety days "to set aside such determination." If no such review is sought "the State committee's determination shall be final and conclusive."

No less than four places the statute carefully restricts it to a *violation*.[7] And

5. 7 U.S.C.A. § 1809.
"The facts constituting the basis for any payment or compensation, or the amount thereof, authorized to be made under this chapter, when officially determined in conformity with applicable regulations prescribed by the Secretary, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government. * * *."

6. 7 U.S.C.A. § 1831(a) (6) (A) and (B).
Subsection (6) (A) covers the event of the Secretary determining "that there has been a violation of the contract * * * at any stage during the time such producer has control of the farm and that such violation is of such a substantial nature as to warrant termination * * *." Subsection (B) covers the event of "a violation of the contract but * * * such violation is of such a nature as not to warrant termination of the contract * * *."

7. 7 U.S.C.A. § 1831.
"(d) A contract shall not be terminated under paragraph (6) of subsection (a) of this section unless the nature of the *violation* is such as to defeat or substantially impair the purposes of the contract. Whenever the State committee believes that there has been a *violation* which would warrant termination of the contract, the producer shall be given written notice * * * and the producer shall * * * within thirty days * * * be given an opportunity to show cause, in an informal proceeding before the county committee * * * why the contract should not be terminated. If the producer does not request an opportunity to show cause why the contract should not be terminated within such thirty day period, the determination of the State committee * * * shall be final and conclusive. If the producer * * * requests an opportunity to show cause why the contract should not be terminated, the county committee, at the conclusion of the proceeding, shall submit a report, including its recommendations, to the State committee for a determination, on the basis of such report and such other information as is available to the State committee, as to whether there has been a *violation* which would warrant termination of the contract. * * * The producer shall be given written notice * * * of the State committee's determination. If the producer feels aggrieved by such determination, he may obtain judicial review of such determination by filing a complaint with the United States district court for the dis-

it is in the last of these that the narrow subject of judicial review is precisely circumscribed. While the statute does expressly state that the "action in the United States district court shall be a trial de novo" it is equally plain that the sole matter for such trial de novo is "to determine whether there has been a *violation* which would warrant termination of the contract."

The courthouse door is opened but slightly. And what may come before the court is given a similar restricted scrutiny. All that the court may entertain, all it may hear, and all it may adjudicate are questions of an asserted *violation* by the producer (not the Secretary). Whatever other reason might be given or asserted for termination or cancellation or substitution of the CRC contract is beyond the power of the court either to hear or to decide.

■ While we therefore fully approve the District Court's holding that this was not a termination because of an asserted *violation* and accordingly beyond the power of the District Court to adjudicate, we wish to make doubly clear that nothing said or unsaid is to be understood as an approval or disapproval by us of the propriety of the action of the County Committee, the State Committee, the Secretary, the Landowner or the new Tenants. The rights under the law of Texas

between Dickson and the Landowner or between him and the successor Tenants with respect to Soil Bank payments received in 1958 and subsequent years are matters for subsequent adjudication in Texas courts. Such matters were not before the District Court nor are they before us.

Once the officials of this governmental activity are out of the case and it is dismissed for want of jurisdiction insofar as it is an attack on the actions taken by them under the Soil Bank Act, we do not think that jurisdiction can be sustained as between the plaintiff Dickson and the defendants Mrs. Edwards, Young and Brown under 28 U.S.C.A. § 1331 or § 1337.[8]

■ The test is the familiar one that it must appear from the complaint[9] that the construction of a federal statute will have an adverse effect on the right of recovery if the statute is construed in one rather than another way. It is not enough under this standard that the statute be brought in as a matter of defense, no matter how positive it may be both that the defendant will assert it and second, that on one asserted construction rather than another, it would or would not be an effective defense. Bell v. Hood, 1946, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939; Gully v. First National Bank, 1936, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70;

trict in which the land covered by the contract is located, within ninety days after * * * notice of such determination, requesting the court to set aside such determination. * * * The action in the United States district court shall be a trial de novo to determine whether there has been a *violation* which would warrant termination of the contract. If the producer does not seek judicial review of the State committee's determination * * * the State committee's determination shall be final and conclusive. The terms 'county committee' and 'State committee' as used herein refer to the county and State committees established under section 590h of Title 16. May 28, 1956, c. 327, Title 1, Sec. 107, '70 Stat. 191." (Emphasis supplied.)

8. 28 U.S.C.A. § 1331 (1949). "The district courts shall have original jurisdiction of all civil actions wherein the mat-

ter in controversy exceeds the sum of value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States."

28 U.S.C.A. § 1337. "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

The complaint was filed June 12, 1958 prior to the effective date of the amendment to the Judicial Code, July 25, 1958, increasing the amount in controversy from $3,000 to $10,000. The amount involved here exceeds $3200.

9. The complaint is here deemed to be amplified by actual evidence admitted by consent on the trial resulting in dismissal for want of jurisdiction. F.R.Civ.P. 15 (b), 28 U.S.C.A.

216

Huckins v. Duval County, Florida, 5 Cir., 1960, 286 F.2d 46.

We do not believe this complaint, amplified as it was, satisfies this test. The plaintiff Dickson's claim [10] against the private defendants in effect is that under Texas law the lease was impliedly extended and consequently Mrs. Edwards had no right to oust him. The claim further asserted that by reason of the execution of a substitute CRC contract, Young and Brown had knowledge of Dickson's status. Consequently since all of the defendants had knowingly participated, the minimum relief required was an equitable accounting of the fruits of the Soil Bank payments received by the three. The complaint sought a suitable declaration of rights, appropriate accounting and restoration of possession for the balance of the "extended" term.

But up to this point the Soil Bank Act, as such, does not enter the picture. On this claim for equitable accounting, equivalent damages and declaratory relief, the nature of the fruits received or their origin as governmental grants rather than as proceeds from the sale of crops, etc., is of no significance. The Soil Bank comes into the case only when the private defendants as a defense to that claim assert that such Act has some decisive significance. Without intimating the correctness of such views, this might take several different forms. For example, the defendants might contend that since the Soil Bank Act permits payment only to a "producer" [11] and the status of Dickson as such a producer was brought into question after his lease ostensibly "expired," the matter was committed to the judicially unreviewable decision of the County Committee and the State Committee.[12] Consequently, it might be argued, the decision adverse to Dickson was res judicata. To determine the correctness of this conclusion, the Court hearing that defense would,

of course, have to interpret the Soil Bank Act to determine whether such matters were of a kind contemplated by Congress to be for decision by such farmer neighborhood courts. Fulford v. Forman, 5 Cir., 1957, 245 F.2d 145, 147. Again, the defendants might urge that the payments of governmental aid was to effectuate a national policy which tied the grant and the recipient to the status of a "producer." Consequently, it would frustrate that policy were a court empowered on general equitable principles to declare that one on the farm as an operator in fact would nonetheless have to hold payments received by him in trust for one who was not an operator ("producer") albeit he would have been such had the defendants not unlawfully dispossessed him as a tenant.

On such suppositions or others readily suggested, such a court will have to determine these questions of statutory construction and application. But it will do so only as a defense, that is as an impediment to the plaintiff's equitable claim or for declaratory relief. That means that a state court will have to adjudicate federal statutory problems. But this happens often in our complex federalism. T. Smith & Son, Inc. v. Williams, 5 Cir., 1960, 275 F.2d 397. Correctness of decision has the substantial protection that the action is reviewable by appeal or certiorari to the United States Supreme Court if in any part of the case—not just plaintiff's complaint—there is presented a substantial federal question. 28 U.S.C.A. § 1257; Supreme Court Rules 10, 15, 16(b), 28 U.S.C.A.

As this complaint between private parties, amplified by actual evidence, was not one arising under a law of the United States, the court had no jurisdiction of it, and the dismissal of this phase was also proper.

Affirmed.

10. We were told on argument that a protective suit was timely filed in the state court by Dickson against these private defendants.

11. 7 U.S.C.A. § 1831(a); 6 CFR 485.150 (q).

12. 7 U.S.C.A. § 1809; 6 CFR 485.151(a) (b) (c); 485.177-8.

On Rehearing by the Court En Banc.

Before TUTTLE, Chief Judge, and HUTCHESON, RIVES, CAMERON, JONES, BROWN and WISDOM, Circuit Judges.

PER CURIAM.

Subsequent to the announcement of the opinion in this case on January 13, 1961, the Court, by an Order en banc, vacated the opinion and judgment and ordered the cause resubmitted along with Caulfield v. United States Department of Agriculture, No. 18429, 5 Cir., 293 F.2d 217, for consideration by the Court en banc. On such reconsideration the Court adheres to the judgment and opinion heretofore filed, and it now becomes the opinion of the Court, en banc.

WISDOM, Circuit Judge, with whom TUTTLE, Chief Judge, and RIVES, Circuit Judge, join (dissenting).

I respectfully dissent for the reasons stated in the dissenting opinion in Caulfield v. United States Department of Agriculture, No. 18429, 5 Cir., 293 F.2d 217.