John D. **MAYS** and Laura F. Mays, his wife, Plaintiffs-Appellees,

v.

Claude R. **KIRK**, Jr., as Governor, et al., Defendants-Appellants.

No. 26568.

United States Court of Appeals
Fifth Circuit.

July 10, 1969.

Rehearing Denied Aug. 20, 1969.

John B. L'Engle, J. Turner Butler, Jacksonville, Fla., for appellees.

Before JOHN R. BROWN, Chief Judge, and GEWIN and GOLDBERG, Circuit Judges.

JOHN R. BROWN, Chief Judge:

■ This non-diversity action involves the title to certain land in St. John's County, Florida. Because title suits are not the customary business of the Federal Courts,[1] this Court has closely examined the question of federal jurisdiction and, after calling for supplemental briefs, has concluded that this case does not arise under the Constitution, laws, or treaties of the United States within the meaning of 28 U.S.C. A. § 1331. Accordingly, we hold that the District Court should have dismissed the action for want of a substantial federal question.

This action is characterized by the plaintiffs, Mr. and Mrs. Mays,[2] as a "suit to remove a cloud on title"—a designation that we accept for purposes of this appeal. The cloud on title is a conveyance, made in 1882, from the United States to the State of Florida, pursuant to the Swamp Lands Act of 1850, 43 U. S.C.A. § 982 et seq. Mays makes the double-barreled contention that the United States did not own the land it purported to transfer and that the land was not "swamp and overflowed" within the meaning of the Act.[3]

Earl Faircloth, Atty. Gen. of Fla., J. Kenneth Ballinger, Asst. Atty. Gen., Tallahassee, Fla., for appellants.

1. That the question of title to land within a state is of primary concern to that state is reflected by the long-standing policy of the Federal Courts to apply state statutory and decisional law as rules of decision in cases affecting title to state lands. See, e. g., Beauregard v. City of New Orleans, 1855, 59 U.S. (18 How.) 497, 15 L.Ed. 469; White v. Burnley, 1857, 61 U.S. (20 How.) 235, 15 L.Ed. 886; cf. Aaron v. Florida Gas Transmission Co., 5 Cir., 1969, 412 F.2d 802.

2. The term "Mays" will hereinafter be used to designate both plaintiffs.

3. The relevant section provides:
"§ 982. Grant to States to aid in construction of levees and drains

To enable the several States (but not including the States of Kansas, Nebraska, and Nevada) to construct the necessary levees and drains, to reclaim the swamp and overflowed lands therein —the whole of the swamp and overflowed lands, made unfit thereby for cultivation, and remaining unsold on or after the 28th day of September, A.D. 1850, are granted and belong to the several States respectively, in which said lands are situated: Provided, however, That said grant of swamp and overflowed lands, as to the States of California, Minnesota, and Oregon, is subject to the limitations, restrictions and conditions hereinafter named and specified in this chapter, as applicable to said three last-named States respectively." 43 U.S.C.A. § 982.

The characterization of the action as one to remove a cloud is critical to Mays's case because it provides an escape from, or at least a path around, the usual rule of federal jurisdiction that the plaintiff is not permitted to anticipate defenses in his complaint. See generally C. Wright, Federal Courts § 18, at 53–55 (1963). There are two essential elements in a cause of action to remove a cloud on title. The plaintiff must prove facts showing (1) his own title and (2) the existence and invalidity of the instrument or record sought to be eliminated as a cloud upon the title. Hopkins v. Walker, 1917, 244 U.S. 486, 37 S.Ct. 711, 61 L.Ed. 1270. See also Woodruff v. Taylor, Fla. Ct.App., 1960, 118 So.2d 822. Thus, although the inclusion in the complaint of matter covered by element (2) might under usual principles be considered the anticipation of a defense, it is settled that these allegations are proper in this kind of action and may provide the source of a federal question. Hopkins v. Walker, *supra*. See generally 1 Moore, Fed. Practice ¶ 0.60[8–3], at 632–34 (2d ed. 1964).

Mays contends that federal questions appear both in the allegations in his complaint relating to his own title and in those relating to the cloud on title (the claim of the State of Florida). We shall discuss each group of allegations separately and state our reasons for holding that no federal question appears in either.

First, Mays traces his own title in almost exactly the same manner as the plaintiff in an earlier case in this court, Huckins v. Duval County, 5 Cir., 1960, 286 F.2d 46, cert. denied, 1961, 366 U.S. 945, 81 S.Ct. 1673, 6 L.Ed.2d 856. Briefly, Mays claims that the land in question was first deeded to a private owner in an eighteenth century Spanish land grant. Claiming that from that time forward the land remained privately owned, he then traces the title through the Treaty of Amity, Settlement and Limits in 1819, several statutes enacted by Congress in the 1820's to implement certain parts of the Treaty, an allegedly erroneous Government survey in 1834, and eventually up to the present.[4] Accordingly, Mays contends that his rights in the land were created by a treaty and laws of the United States and are an essential element in his cause of action, and also that these rights will be supported if the treaty or laws receive one construction or effect, and defeated if they receive another.

The test of federal question jurisdiction is a familiar one:

"To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. * * * The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another."

Gully v. First National Bank, 1936, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70, 72. See also Fountain v. New Orleans Public Serv., Inc., 5 Cir., 1967, 387 F.2d 343. The same rule applies where a treaty is relied upon. Hidalgo County Water Control & Imp. Dist. No. 7 v.

---

4. Although the Trial Judge found that Mays had successfully traced record title back to one of the early grantees, this is not completely accurate. For it now appears to be conceded that Mays' claim is actually based on adverse possession.

Florida recognizes the general rule that one acquires no right by adverse possession or prescription in lands owned by the Government. Lovey v. Escambia County, Fla. Ct.App., 1962, 141 So.2d 761, cert. denied, 147 So.2d 530. See generally 3 Am.Jur. 2d Adverse Possession § 205; Annot.,

55 A.L.R.2d 554 (1957). And, presumably Florida would apply this rule to state-owned, as well as federally owned, property. See Lovey v. Escambia County, *supra*, 141 So.2d at 774 (dissent). Therefore, since Mays cannot adversely possess against the State, the success of his claim is dependent on showing that title was always in a private person, rather than the Federal Government or the State. Mays does not claim to show, nor does he have to show, a good *record* title in order to prove a good title in himself.

Hedrick, 5 Cir., 1955, 226 F.2d 1, cert. denied, 1956, 350 U.S. 983, 76 S.Ct. 469, 100 L.Ed. 851. Applying this test to the allegations in the complaint related to Mays's title, we hold that this case is controlled by the principles enunciated in Huckins v. Duval County, *supra:*

"Here, it may be said, there is a right claimed by the appellants which was created by a treaty and laws of the United States and such right is an essential element of the appellants' cause of action. But it is not such that it will be supported if the treaty or laws receive one construction or effect, and defeated if they receive another.

"The appellants, in stating the question involved, make the assertion that the treaty and the congressional acts 'should be construed' as fixing the northern boundary of the grant. The appellants, in their complaint, allege that the appellees contend that the congressional acts should be construed as requiring a survey before the title was complete and so authorized the United States to change the boundary of the grant, and hence, the appellants urge, there is Federal jurisdiction. The appellees do not find any such question presented nor do we.

"We are unable to see any necessity for a construction of the Treaty or the Acts of Congress in order to make a disposition of the case.

"The question here is one of conflicting claims as to the boundaries of the land embraced within the Spanish grant to Atkinson. The answer to the question may involve a construction of the grant, a determination of the consequences of the proceedings held and the action taken by the Commissioners, a decision as to the validity of the patent to the State of Florida, or an ascertaining of the effect of the Government surveys. There may be presented some or all of these questions. There may be issues of fact which require adjudication. It is not enough for the plaintiffs to show that their claim is dependent upon a treaty or on an act of Congress or that the adverse claim has its origin in a patent of the United States. To sustain the jurisdiction it must appear from the complaint 'that the suit is one which really and substantially involves a dispute or controversy as to a right which depends upon the construction or effect of the Constitution, or some law or treaty of the United States; that the suit, in whole or in part, arose out of such controversy, or that a decision of the case depended upon such construction.' Kirklin v. Ellerbe, 5 Cir., 1922, 278 F. 168, 170. The appellants do not make the required showing. The complaint was properly dismissed." 286 F.2d at 49.

■ In summary, the question whether the land involved in this case was owned by the United States or by a private individual at the time the Federal Government purported to convey it to Florida (see note 4 *supra*) simply does not present a federal question. Apparently, the District Judge too felt that under *Huckins* Mays's allegations of title did not present a substantial federal question for he turned to the allegations dealing with the cloud on title to find a jurisdictional foundation.

As previously stated, the cloud on the title is the patent of the United States to the State of Florida pursuant to the Swamp and Overflowed Lands Act of 1850. One of Mays's contentions is that the land purportedly conveyed to the State was not "swamp and overflowed lands" within the meaning of the statute, 43 U.S.C.A. § 982.[5] In overruling the State's motion to dismiss for want of jurisdiction, the District Judge held that the question whether the lands were in fact swamp and overflowed lands within the meaning of the Act presented a valid federal question. We cannot agree.

■ For jurisdictional purposes a federal question must be substantial and

5. See note 3 *supra*.

not frivolous. See Gully v. First National Bank, 1936, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70. See generally 1 W. Barron & A. Holtzoff, Federal Practice and Procedure § 25 (Wright ed. 1960). Substantiality may be determined by a two-pronged test:

"[L]ack of substantiality in a federal question may appear either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject."

California Water Serv. Co. v. City of Redding, 1938, 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323, 1325; Green v. Board of Elections, 2 Cir., 1967, 380 F.2d 445, cert. denied, 1968, 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840.

In evaluating the substantiality of the question asserted here, we have carefully considered the Swamp Lands Act of 1850 and the Supreme Court's decisions construing that Act. The Court's decision in United States v. O'Donnell, 1938, 303 U.S. 501, 58 S.Ct. 708, 82 L.Ed. 980, contains a useful, brief summary of the purpose and effect of the statute:

"The Swamp Lands Act of 1850 was effective to transfer an interest in the lands described in the Act, only so far as they were part of the public domain of the United States and thus subject to the disposal of Congress. The Act in terms purported to grant to the several states all swamp and overflowed lands located within their respective boundaries 'which shall remain unsold at the passage of this Act.' Section 2 made it the duty of the Secretary of Interior 'to make out an accurate list and plats' of the lands described by the Act and to 'cause a patent to be issued to the state therefor.' The effect of these provisions was to invest the state in praesenti with an inchoate title to those lands falling within the description of the Act, to be perfected as of the date of the Act when the land should be identified and the patent issued as provided by § 2. Wright v. Roseberry, 121 U.S. 488, 30 L.Ed. 1039, 7 S.Ct. 985; United States v. Minnesota, 270 U.S. 181, 202, 203, 70 L.Ed. 539, 547, 548, 46 S.Ct. 298." 303 U.S. at 509–510, 58 S.Ct. at 714, 82 L.Ed. at 985.

In our view, this is unquestionably one of those cases in which the "unsoundness" of the federal question asserted "so clearly results from the previous decisions" of the Supreme Court that the subject must be considered foreclosed. In his complaint in the District Court, Mays acknowledges that in 1882 the Secretary of the Interior, pursuant to 43 U.S.C.A. § 983,[6] patented the tract in question to the State of Florida as swamp and overflowed lands. The Trial Judge held that review of this fact determination presented a federal question. But it has been established that this determination is not judicially reviewable, for the Supreme Court has consistently held that a decision of the Secretary of the Interior as to whether certain lands are within the terms of the general swampland grant is controlling. That is, in the absence of fraud the Secretary's determination of the status of the land, one way or the other, is conclusive and not subject to collateral attack and relitigation in the Courts. French v. Fyan, 1876, 93 U.S. 169, 23 L.Ed. 812. See also Wright v. Roseberry, 1887, 121 U.S. 488, 7 S.Ct. 985, 30 L.Ed. 1039; Heath v. Wallace, 1891, 138 U.S. 573, 11

6. This section provides:

"§ 983. Lists and plats of lands, for governors of States

It shall be the duty of the Secretary of the Interior, to make accurate lists and plats of all such lands, and transmit the same to the governors of the several States in which such lands may lie, and at the request of the governor of any State in which said swamp and overflowed lands may be, to cause patents to be issued to said State therefor, conveying to said State the fee simple of said land.

The proceeds of said lands, whether from sale or by direct appropriation in kind, shall be applied exclusively, as far as necessary, to the reclaiming said lands, by means of levees and drains." 43 U.S.C.A. § 983.

S.Ct. 380, 34 L.Ed. 1063; McCormick v. Hayes, 1895, 159 U.S. 332, 16 S.Ct. 37, 40 L.Ed. 171; Johnson v. Drew, 1898, 171 U.S. 93, 18 S.Ct. 100, 43 L.Ed. 88.

In the instant case, where there is no claim, proof, or question of fraud, the 1882 patent by the Secretary is conclusive on the status of the tract as swamp and overflowed land.[7] Accordingly, although the swamp-and-overflowed determination might in the abstract have provided a sufficient jurisdictional base, we find that the Supreme Court's removal of that question from the ambit of judicial review left no unsettled construction of that statute. Consequently, this simultaneously eliminated any claim that a substantial federal question was presented therein.

Although there is a strong indication that the determination that the land was swamp and overflowed would also be binding in any subsequent litigation in the State Courts, *see, e. g.*, Chauvin v. Louisiana Oyster Comm'n, 1907, 121 La. 10, 46 So. 38, we need not, and do not, decide that question. But even such a result does not foreclose all possibility of victory for the plaintiffs here. Apart from the Swamp Lands Act, it remains open to them to show that the land never belonged to the United States, i. e., that it belonged to private owners in the period since 1792, and that therefore the United States could not by the Swamp Lands Act convey something it did not own. See United States v. O'Donnell, 1938, 303 U.S. 501, 58 S.Ct. 708, 82 L. Ed. 980, where the Court stated:

> "By its terms the Swamp Lands Act did not include swamp lands which the

Government had sold, *and it could not include lands which the Government had not acquired* or free any of them of obligations to which they were subject when the Act was passed."

303 U.S. at 510, 58 S.Ct. at 714, 83 L. Ed. at 985 (emphasis added). However, as we have stated before, this does not have anything to do with an unsettled construction of a treaty or statute. Thus, the issues of title and boundaries in the relevant period do not present questions within the subject matter jurisdiction of the Federal Court under 28 U.S.C.A. § 1331. Consequently, the District Court's judgment in favor of the plaintiffs must be reversed and the case remanded to the District Court with directions to dismiss for lack of federal jurisdiction.

Reversed and remanded with directions.

---

7. The case of French v. Fyan, 1876, 93 U.S. 169, 23 L.Ed. 812, is clearly controlling here. In *French*, which was an action in ejectment, the plaintiff, by purchase in 1874, acquired whatever title had passed to the Missouri Pacific Railroad in 1854 under an Act granting lands to that company for construction of its railroad. The defendant based its claim on a patent issued in 1857 under the Swamp Lands Act of 1850. Because the Swamp Lands Act operated as a present conveyance (in 1850) of the lands later designated (in 1857), the defendant had made out a better title, (since the railroad claim did not originate until 1854). To rebut this, the plaintiff offered to prove by witnesses who had known the character of the land from 1849 until the time of trial that the land was not actually swamp or overflowed, and made unfit thereby for cultivation, and that since 1849, the greater part was not, and never had been, in that condition. This proferred parol evidence was held inadmissible, the Court concluding that the Secretary's decision reflected by the patent was controlling.